# Haag *v.* Prudential Insurance Company of America, Appellant.

Argued January 6, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

*Kendall H. Shoyer,* with him *Andrew C. Dana,* for appellant.

*John Pemberton Jordan,* for appellee.

Opinion by Mr. Justice Patterson, March 20, 1944:

This is an action in assumpsit by Claudine Haag against the Prudential Life Insurance Company of America, appellant, to recover on a policy of life insurance upon the life of her deceased husband, Charles W. Haag. The company denied liability, alleging that the insured had made fraudulent statements in his application for insurance with regard to prior application for insurance and to the condition of his health. A jury returned a verdict in the amount of the face value of the policy plus interest. This appeal is from the refusal of the court below to grant appellant's motions for a new trial and for judgment non obstante veredicto.

On December 5, 1941, Charles W. Haag made application for insurance with appellant company and paid a premium of $9.75. On December 10, 1941, insured was

examined by the company doctor and certified as an insurable risk. A policy for $3000 was issued forthwith by the home office. Haag became ill December 24, 1941, and was taken to the Graduate Hospital the following day. On January 2, 1942, an operation was performed upon him. The operation disclosed cancer of the colon. He died January 6.

The fraudulent representations alleged to have been made, and chiefly relied upon by appellant at oral argument, are the answers to the following questions: "Q. Are you negotiating or have you applied for other insurance on your life at this time in this or any other company or association?" "A. No." "Q. Have you ever been examined for, or have you applied to any agent, company, association or society for insurance without having yet received a policy of the exact kind, premium and amount applied for?" "A. No." "Q. Has any company or association ever declined to grant insurance on your life?" "A. No." Appellant's evidence shows that on November 12, 1941, insured signed an application for insurance in the amount of $3500 with the Metropolitan Life Insurance Company, was examined by the company doctor on November 18, 1941, and passed as a good physical risk. Several attempts were made by Mr. Packer, agent for the Metropolitan Life Insurance Company, to deliver the policy to insured. It appears, and the jury by its verdict so found, that Haag did not desire to take the policy because it was not the type that he desired,—in fact, an agent for the Metropolitan Company stated that decedent inferred that he did not want the insurance.

The first question specifically refers to the time of application. "At this time" can only refer to the time application is made. The question cannot obligate an applicant to disclose or even suggest any prior negotiations for insurance which he may have had with any company. With regard to the second question, the evidence fully establishes that Haag refused to accept the Metropolitan policy. We are urged to say, however, that the proper interpretation of the question requires the appli-

cant to disclose information concerning any application for insurance, regardless of whether the company actually issued the policy exactly as the applicant requested, if he refused to accept it. The reason for the question is to secure information pertaining to physical defects affecting the risk. To ascertain reasons for refusal by other companies to insure is the purpose; not to become acquainted with the applicant's reason for refusing to accept tender of a policy containing all provisions and conditions requested by him. What has been said with regard to the refusal to accept the Metropolitan policy sufficiently answers any suggestion relating to the third question. Under the evidence, no answers other than those given by Haag would have been proper.

With regard to the falsification of his statement concerning prior illness, the evidence establishes that several physicians had been consulted during the past several years to remedy what appeared to be indigestion and gas pains. None of the doctors, however, made a thorough diagnosis, and the only documentary evidence is the card record of Dr. Schmidt, who saw decedent on April 26, 1941. The card record also shows that insured informed him of having contacted other physicians and having secured relief by taking prescribed medicines. There is no evidence in the entire record to show that decedent knew or had reason to know of the existence of cancer in his colon. Appellee and several disinterested witnesses testified to the apparent good health of the insured. Appellee stated that, to her knowledge, insured was attended at his home by a physician on only one occasion,—that being immediately prior to his removal to the hospital.

The policy issued by appellant contained the usual provision that all statements made in the application were to be deemed representations and not warranties.[1]

---

[1] Act of 1937, P. L. 774, Section 1, 40 P.S. Section 512a: "All statements made by the applicant for an annuity or pure endowment contract, or statements made by the insured or in his behalf in the negotiation for a policy or certificate of life, endowment, accident or health insurance, or any reinstatement thereof issued by any insur-

In *Evans v. Penn Mutual L. Ins. Co.*, 322 Pa. 547, a thorough analysis was made of all cases dealing with avoidance of a policy for misrepresentations in the application. In that case this Court said, (p. 553): "The insurer must thus establish, in order to avoid the policy in the case of representations, that the statements relied on were falsely and fraudulently made. It is sufficient to show that they were false in fact and that insured knew they were false when he made them . . ." The test of recovery is the good faith of the insured: *Prevete v. Metropolitan L. Ins. Co.*, 343 Pa. 365, 368. The burden of proving fraud is on the insurer: *Prevete v. Metropolitan L. Ins. Co.*, supra, 368; *Evans v. Penn Mutual L. Ins. Co.*, supra, 551. In summarizing the principles applicable to this type of case it was said, in *Evans v. Penn Mutual Life Ins. Co.*, supra, 560: "Where the statements are made representations, the insurer, to avoid the policy, must show they were false and insured knew they were false or otherwise acted in bad faith in making them. (3) If such falsity and the requisite bad faith affirmatively appear (a) from competent and uncontradicted documentary evidence, such as hospital records, proofs of death, or admissions in the pleadings, or (b) from the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer. (4) But whenever disputed questions of fact are presented by conflicting evidence, whether documentary or oral, or whenever the insurer's defense depends upon the testimony of its witnesses, even though such testimony is uncontradicted, the case must be submitted to the jury . . ."

The record is devoid of evidence which would permit a court to determine, as a matter of law, that insured has been guilty of fraud or bad faith. The evidence is to the contrary. Deceased's refusal to accept the Metropolitan policy when tendered is inconsistent with an intention

ance company, association, fraternal society, beneficial society or exchange doing business in this Commonwealth, shall be deemed, in the absence of fraud, to be representations and not warranties."

to deceive and to profit by such deception. The issues were properly submitted to the jury and it, by its verdict, has properly determined appellant's liability.

Appellant's argument that the hospital record was competent evidence and constituted such uncontradicted documentary evidence which would require the court to hold as a matter of law that the insured actually knew, or must be presumed to have known, of his ill health at the time application for the insurance was made is entirely without merit.

Judgment affirmed.