## The Maccabees, Appellant, v. Cappas.

Argued November 17, 1947. Before Rhodes, P. J., Hirt, Dithrich, Ross, Arnold and Fine, JJ. (Reno, J., absent.)

*John F. Gloeckner,* for appellant.

*James A. Wright,* with him *Morris M. Berger,* for appellee.

Opinion by Ross, J., March 8, 1948:

The Maccabees, a fraternal benefit association, on April 1, 1941, issued its benefit certificate insurance policy in the sum of $1,000 on the life of James P. Cappas, aged forty-five. Efthemia Cappas was named beneficiary. The policy was issued pursuant to the application of the insured made February 3, 1941. The insured died August 17, 1941 and proofs of death were furnished. On September 11, 1943, the Maccabees filed this bill in equity against Efthemia Cappas praying that upon payment of the premiums of $21.65 the policy be cancelled because of alleged false answers in the application, to which the defendant beneficiary filed her answer denying the alleged fraud. After trial, etc., the court en banc entered a decree in favor of the defendant and the plaintiff appealed to this court at No. 146 April Term, 1945. We reversed the court below and remitted the record for further proceedings and findings of fact, particularly "whether incorrect answers were given because of euphoria, or some other mental abnormality, or otherwise". (*Maccabees v. Cappas,* 157 Pa. Superior Ct. 481, 43 A. 2d 538). Subsequently, after making findings of fact, the court below entered a decree dismissing the plaintiff's bill and this appeal was taken.

In seeking to have the policy declared void because of fraud, the plaintiff relies, inter alia, upon the answers given to the following questions in the application: "39. Are you now in good health? Yes. . . . 65. Have you ever had any disease, operation, injury, illness or disability not mentioned? No." The court en banc made, inter alia, the following findings of fact: "7. Insured contracted syphilis for which he was treated in 1921, and he was told at that time by his physician that he had syphilis. 8. Insured was treated in 1935 by another physician who administered anti-syphilitic treatment, but was not told at that time that he had syphilis. Assured was admitted August 2, 1941 to the St. Francis Hospital, where he died August 17, 1941 of Coronary Occlusion and Dementia

Paralytica or paresis. . . . 10. Insured was afflicted with syphilis when he signed the application for insurance."

The policy issued by the plaintiff contained the provision that all statements and answers in the application were to be deemed "representations and not warranties". Consequently in order to avoid the policy the insurer must show that the statements and answers relied on were false and that the insured knew they were false or otherwise acted in bad faith in making them. *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 186 A. 133; *Haag v. Prudential Insurance Co.*, 348 Pa. 614, 36 A. 2d 470. Admittedly the insured gave false answers in his application but the learned court below concluded that "Plaintiff has failed to meet the burden of proving that insured deliberately falsified or was guilty of bad faith."

The court below made further findings of fact as follows: "12. During the last stage of his disease, insured was subject to Euphoria, which is a false feeling of well being and good health and was also subject to impairment of memory, of which latter condition he was unaware. 13. These physical symptoms were present at the time the application was signed on February 3, 1941. 14. Insured was not aware that his answer to question 39, was, as a matter of fact, untrue. 18. . . . Plaintiff introduced the oral testimony of Dr. Pearlman and the written hospital record which both established that at the time of signing the application for insurance, insured suffered from an impairment of memory. No evidence was offered to indicate that insured's memory was normal nor to indicate insured made deliberate misstatements."

Dr. Pearlman, who had treated the insured for syphilis in 1922, was called as a witness for the plaintiff. In part, he testified as follows: "Q. What is the genesis of paresis? A. Paresis is also known as paretic dementia and the most logical factor is syphilis. It is frequently due to syphilis. Q. Over what period of time is that condition present? A. It may develop anywhere from

ten to fifteen years after the initial inception of the disease. . . . The germs that cause syphilis are in the blood and they finally lodge in the brain and the central nervous system and they break out and give rise to paresis after remaining there a period of years and they light up and give this disease of paresis" and further testified, "Q. If he has memory defect that he didn't have before, does he realize he has those defects? A. No, he doesn't" and "He thinks he is much better than he was before his paresis." In Dorland's American Illustrated Medical Dictionary paresis or dementia paralytica is defined as "a chronic disease of the brain characterized by degeneration of the cortical neurons and marked by progressive loss of mental and physical power".

The insured was admitted to the St. Francis Hospital on August 2, 1941, where he died on August 17, 1941. The plaintiff introduced into evidence the hospital record which sets forth, under "History": "Patient has been diagnosed as a syphilitic and laboratory studies have confirmed it. First symptoms were noted about a year ago—impairment of speech and of ability to write. . . . Gradually he began to show memory defects, forget names, places and what he was told to do. . . . His conversation is often childish, irrelevant or wordy and senseless"; under "Admission Note": "Since admission patient has shown impairment of orientation and memory and slight euphoria. He always greets everyone with a smile and indicates that he feels all right. There is a marked aphasia and peri oral tremor"; under "Final Note": "Patient was admitted with a history and showing symptoms of disorientation, memory impairment, aphasia and motor incoordination".

It is clear from the evidence that the insured underwent mental and physical disintegration and we cannot say as a matter of law that he was guilty of fraud or bad faith.

Decree affirmed, at the cost of appellant.