Thorndell, Administratrix et al. *v.* Munn, Appellant.

2

Argued September 30, 1929.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*George E. Alter,* of *Alter, Wright & Barron,* with him *Prentice & Townsend,* of New York City, and *Playford & Phillips,* for appellant.—Equity will, on proper occasion, intervene and set aside voluntarily executed deeds and other instruments, yet the power to do so is of an extremely delicate character, not to be lightly exercised, and only to be invoked when the manifest justice of the case requires it: Simon v. Simon, 163 Pa. 292; Carney v. Carney, 196 Pa. 34.

*Buell B. Whitehill,* of *Jones, Whitehill & Lane,* with him *Higbee, Matthews & Llewellyn,* for appellee.—The relation of the physician to his patient is one of trust and confidence: Matthaei v. Pownall, 235 Pa. 460.

The undisputed facts constitute a constructive fraud, which defendant failed to overcome by sufficient evidence: Darlington's Est., 147 Pa. 624; Unruh v. Lukens, 166 Pa. 324, 330; Miskey's App., 107 Pa. 611, 629; Corrigan v. Conway, 269 Pa. 373, 377; McConville v. Ingham, 268 Pa. 507, 519; Worrall's App., 110 Pa. 349.

OPINION BY MR. JUSTICE SIMPSON, November 25, 1929:

Plaintiff, as personal representative of the estate of Mary Ellen Kirkwood (hereinafter called decedent), and as residuary legatee under her will, filed a bill in equity to set aside a transfer of certain bank stock, constituting, in value, about five-sixths of her estate, made by her to defendant more than six years before her death, and at no time repudiated by her. The chancellor advised that the bill be dismissed, but the court in banc, the chancellor dissenting, decreed as prayed for, and defendant appeals.

The nature of the principal differences of fact between the chancellor and the court in banc, again compels us to call attention to the well-settled rule that though it is the duty of the latter to review carefully such of the

4

findings of fact of the former as have been made the subject of exceptions (Worrall's Appeal, 110 Pa. 349; Miller's Estate, 279 Pa. 30; Gehringer v. Erie Railways Co., 297 Pa. 47), yet great weight is to be given to those findings in cases where, as here, they depend, in large degree, on the credibility of witnesses whom he saw and heard, and whose testimony, for that reason, he is best able to weigh: Clarkson v. Crawford, 285 Pa. 299, 303; Hall & Co. v. Lyon, Singer & Co., 286 Pa. 119; Phillips's Estate, 295 Pa. 349. As the tone and manner of a witness not infrequently indicate whether or not he is telling the truth, the rule above stated applies to findings of fact which are inferential, as well as to those which have been expressly testified to (Robb v. Stone, 296 Pa. 482; More v. People's Bank & Trust Co., 297 Pa. 252), and is particularly applicable to cases like the present, where the knowledge and condition of the donor and the possible actual or constructive fraud of the donee are the most important matters to be determined: Hetrick's Appeal, 58 Pa. 477, 479; Plankinton's Estate, 212 Pa. 235, 237. The effect of overlooking this rule by the court in banc permeates its opinion throughout, but was particularly erroneous in so far as it resulted in greatly qualifying, if not wholly rejecting, the testimony of the only witnesses, each legally disinterested, who were present at the time the assignment of the stock was made, because one had for a long time been the secretary of the defendant, and the other, a physician, had long been his business associate and friend. These are, of course, matters to be considered when weighing their testimony, but they may be credible witnesses none the less, and often, as is the case here, are the only ones who can tell of what occurred at the vital time under consideration. In the instant case, the chancellor, who saw and heard them, said in his adjudication that they were entitled to be believed and he did believe them, and particularly commended the secretary, whom he denominated "a fine type of witness, a very sincere and candid one, and such

a one as impressed us with her sincerity, integrity and truthfulness." Both of them had known decedent for several decades, were, by reason of this fact, best able to compare her condition at the time she executed the assignment with that of years before, and both testified to her full capacity at the time. We have carefully reviewed their testimony in the light of this difference of opinion between the chancellor and the court in banc, and, being on the same plane as the latter,—because each is limited to the printed page, and hence equally capable of drawing the necessary inferences: Mirkil v. Morgan, 134 Pa. 144, 155,—we add that, though we find immaterial errors in the testimony of the secretary, as is practically always so where a witness has a long story to tell, we find nothing in this record to cause hesitation in applying to each of them the foregoing rule regarding the weight to be given the chancellor's findings.

From this standpoint we find the facts in the case to be as follows (the differences between the chancellor and the court in banc being indicated) : On November 12, 1917, when testatrix transferred the stock to defendant, though she was eighty years old, she had no apparent ailment of body, and had been sick but once in twenty years; that, notwithstanding her advanced age, her mind was unusually clear in relation to all matters, whether personal or of business (the court in banc would exclude the latter) ; that she had only received the formal certificate for the stock a few days before its transfer to defendant, the clear business correspondence in relation thereto being conducted by her personally; that the transfer to defendant was in form and was intended by her to be an absolute gift thereof to defendant, who was a man of high character; was voluntarily made by her, without any fraud, deception or undue influence being practiced upon her (the court in banc would exclude constructive fraud from this finding) ; was induced by acts of kindness and friendship on his part extending over a period of years; was made, without any solicita-

tion on his part, at a time when she was not suffering from any physical or mental ailment, and when she knew (the court in banc says "when she had the means of knowing") the value of the stock and the value of her other property. The acts of kindness referred to were attending decedent, who was a soldier's widow, as her family physician, for a period of forty years,—daily during several of the earlier years—without rendering any bill to her or being paid for his services. The gift of the stock was not a new idea, which came into being about the time of the transfer, but had been repeatedly tendered by her to him during a number of years, had been declined by him, and the suggestion made by him to her that she give it to her relatives. Those relatives were not near to her in blood, plaintiff, the nearest, being the granddaughter of a sister of the father of decedent; nor had they endeared themselves to her by kindness, decedent saying that none of them "cared anything about her," which was the fact so far as the evidence discloses, whereas defendant was "her best friend," as for more than a generation he had proved himself to be. At the execution of decedent's will, two days after the assignment of the stock, decedent detailed of what her estate consisted, but did not refer to the stock except to say she had given it to defendant. So far as appears, defendant had nothing to do with the drawing of the will, but in it she appointed "my long esteemed friend, Dr. John P. Munn [the defendant] ......the sole executor." Plaintiff bases her claim on this will. On the day of the transfer of the stock to defendant he was still reluctant to take it, but finally yielded to decedent's importunities and accepted it on the express written condition that she should receive "whatever dividends are paid upon this stock as long as she lives." This she assented to, herself filled out the blanks in the printed form of assignment, without aid or suggestion from anybody, signed it and asked the disinterested physician already referred to, to witness it.

Thereafter she received all the dividends on the stock until her death six and a half years later. During all the time hereinbefore referred to, decedent was living alone, a strong, healthy woman, doing her own work, such as washing and mending, and while economical in the matter of her expenses, probably because of the comparatively small amount of her estate, nevertheless always insisted on paying her own way.

That decedent knew the value of the bank stock she gave to defendant is not a matter of doubt. About two months before the gift, the cashier of the bank wrote to her making an offer for the stock, at its then value, which remained unchanged until the time of the transfer. The evidence also bears out the chancellor's finding that decedent knew the value of the balance of her small estate. As already said, she stated its every item at the making of her will two days after the execution of the assignment of the stock. Her estate was handled by her personally; she personally collected her income and expended or deposited it without aid from any one, though, on eleven occasions, defendant or his secretary had the insurance company, of which he was president, cash her dividend checks, and defendant allowed her to keep her valuable papers in his safe. The court in banc says that decedent "did not consider herself capable of managing her business affairs"; the chancellor says, and the evidence justifies the finding, that she did in fact manage them, and there is no pretense that they were mismanaged at any time. The court in banc says "the proofs do not show that the gift was 'intelligently' made, in the sense that she understood the consequences of this gift or its effect upon her future maintenance, or that she received advice upon that question from any person." Under the chancellor's findings she must have known the effect of the gift in taking from her the control of the principal of the bank stock, leaving to her the income for the balance of her life, that income and her pension from the government having been more than

ample to supply her simple needs during the course of many years, and continuing to be so after the assignment just as before. Upon these matters she needed no advice from any one; she knew without advice. Finally, the court in banc says that, even if the evidence of the two witnesses who were present at the time of the assignment was to be given any weight, it "dwindles in significance in view of the fact that within fourteen months after she assigned her bank stock to [defendant, she] was confined in a sanitarium for mental treatment where she suffered from paresis until the time of her death." Even if the facts stated were true, the conclusion attempted to be drawn from them would be a non sequitur, for it never was so that for fourteen months prior to incompetency, a person must be held to be, or ever be presumed to be, incompetent; but the facts are not correctly stated. Some fourteen months after the execution of the assignment, decedent, then eighty-one years of age, was ill and went to a "place where they look after old people," a "sort of sanitarium," but there is no evidence that she was sent there for mental treatment, or that she at any time suffered from paresis, but only that "she was a little peculiar......[nothing] particularly wrong with her; she didn't want to talk,—depressed," a condition not to be wondered at, at her time of life, alone in a home for old people, with no friends about her.

Despite the opinion of the court in banc and the able argument of appellee's counsel, we think the findings of fact by the chancellor compel an approval of his conclusion that the gift to defendant must be sustained. It is not our purpose, even in the slightest degree, to qualify our oft repeated rule in this class of cases. It is clear that the relation between decedent and defendant was a confidential one, and since, by the gift, he received a large portion of her estate, the burden was cast upon him to "prove [affirmatively] that the gift was made intelligently and with a full knowledge......of the true character of the transaction" (Clark v. Clark, 174 Pa.

309, 326) : "that no deception was used, and that all was fair, open, voluntary and well understood" (McConville v. Ingham, 268 Pa. 507, 518) ; that the transaction was fair, conscionable and beyond the reach of suspicion; that he had not availed himself either of the necessities of decedent or her good nature, liberality or credulity; and that the proof was full and clear that the transaction was the free and intelligent act of decedent performed with a thorough understanding of the transaction and of its consequences: Darlington's Estate, 147 Pa. 624; Miskey's Appeal, 107 Pa. 611; Matthaei v. Pownall, 235 Pa. 460; Corrigan v. Conway, 269 Pa. 373. But the rule does not require proof that a donor was told all those things, it is sufficient if she knew them at the time of the gift (Clark v. Clark, supra) ; nor does it require that what was done should be so far above the plane of humanity in general that counsel cannot suggest something better, if it shows that all the legal requirements have been fully met. Where, as here, the gift was the free and voluntary act of the donor, not suggested to her by any one; was the carrying out of her cherished purpose of more than a decade, was executed at a time when she was in bodily and mental health and knew of the value of the gift and of the extent of the rest of her estate, and was made to one who for more than a generation had been the only one who had really done anything for her; it must be clear that the chancellor, who saw and heard the witnesses, was justified in finding, as he did, that every requirement of the rule of public policy, for the protection of those who need it most, had been fully complied with. And this conclusion is not affected by the fact, much relied on by the court in banc, that because defendant had not told decedent that unanticipated exigencies might arise, circumstances which had not arisen in forty years, in which event she might need the corpus of the stock, her long matured intention must be defeated. This improbable possibility never in fact arose; she knew as well as, if not better

than, defendant, the possibility of it, for she had had more than forty years' experience with her estate. To hold that a donee must foresee all the possibilities resting in the womb of time, and must call a donor's attention to them, however improbable they may be, would be to defeat every gift, for improbable contingencies are always possible, no donee has prescience enough to be able to foresee all of them, and ingenious counsel can always argue that they should have been foreseen and the donor advised accordingly. While a court of equity should, in proper cases, unhesitatingly set aside gifts between persons situated like decedent and defendant, "the power to do so is of an exceedingly delicate character, not to be lightly exercised, and only to be invoked when the manifest justice of the case requires it": Carney v. Carney, 196 Pa. 34, 37; Longenecker v. Zion Evangelical Lutheran Church, 200 Pa. 567, 574, 578. Here there is no such requirement.

The decree of the court below is reversed and plaintiff's bill in equity is dismissed at her costs.