## Reist's Estate

*Arnold & Bricker*, for exceptants.
*F. Lyman Windolph* and *James N. Lightner*, contra.

APPEL, P. J., June 11, 1945.—Messrs. Arnold & Bricker, attorneys, have presented a bill for $500 for professional services rendered as counsel for plaintiffs in the equity suit entitled John L. Reist, individually and as one of the executors and one of the residuary trustees under the will of Linnaeus R. Reist, also known as L. R. Reist, deceased, plaintiff, and Anna Reist Baird, intervening plaintiff, v. Linnaeus Landis Reist, also known as Linn L. Reist, defendant, in the Court of Common Pleas of Lancaster County, which bill was approved by John L. Reist, one of the executors, who requested its allowance at the audit of the executor's account.

L. L. Reist, defendant in the equity suit above referred to and one of the executors of L. R. Reist, deceased, objected to the allowance of the above claim and payment from this estate.

In support of this claim all the proceedings in the equity suit in the court of common pleas were offered in evidence and a stipulation was made at the bar of this court concerning the nature and character of the services rendered.

A short résumé of the equity proceedings indicates an effort on the part of plaintiffs therein to set aside certain conveyances made by L. R. Reist, the father of the parties in said equity proceedings, in his lifetime to L. L. Reist, defendant, individually, on the ground that L. R. Reist was mentally incompetent at the time of the execution and delivery of the deeds and was under undue influence on the part of defendant, L. L. Reist, and lack of adequate consideration.

Messrs. Arnold & Bricker represented plaintiffs in the equity suit, and it is admitted that a fair and reasonable attorney fee for the professional services performed by them in that suit would be $500. The question before the court at this audit, therefore, is whether this is a lawful claim which should be allowed for payment by the estate of L. R. Reist, deceased.

L. R. Reist, aged 89 years, a resident of Manheim Township, this county, died on December 1, 1942. He had been a resident of Manheim Township for many years. His wife predeceased him. Being seized of a large and valuable farm in this township, he executed his will dated September 9, 1941, the provisions of which are set forth in the adjudication.

Subsequent to the execution of the will by deeds dated October 9, 1941, and November 18, 1941, respectively, the testator sold and conveyed his real estate to his son, Linnaeus L. Reist, and thereafter on December 26, 1941, he published a codicil to the will of September 9, 1941, which contains the following provision:

"Whereas, I have disposed of my real estate since making my last Will and Testament, said estate at that time consisting of both real and personal property. I now wish to confirm the sale of my real estate as of October 9, 1941 and November 18, 1941 to my son, Linnaeus L. Reist, and my estate now consists only of personal property. This Codicil is for the purpose of confirming the above mentioned conveyances and the directions in my Will are to be carried out in the same

manner as if the real estate had not been mentioned therein and distribution shall be made in accordance therewith."

Nearly a year after the execution of this codicil L. R. Reist died. Upon his death the executors named in the will filed their petition for the probate of the will and the codicil, and at the same time produced James N. Lightner (a member of this bar) and Jennie W. Barton, subscribing witnesses to the will, who made affidavit that, "They were each present and saw and heard said decedent, the testator therein, sign, seal, publish and declare the same as and for his last will and testament and codicil and that at the doing thereof said decedent was of sound, disposing mind, memory and understanding to the best of their knowledge and belief." At the same time Messrs. Arnold & Bricker and James N. Lightner entered their appearances as attorneys for the estate. The executors named in the will, upon being qualified and having letters testamentary committed to them, proceeded with the administration of the estate and their account as such fiduciaries is now before the court for audit.

In the equity suit above referred to and for the legal services in connection therewith for which the bill of Messrs. Arnold & Bricker is now presented to the court, a bill of complaint was entered and filed on October 20, 1943, more than 10 months after the decedent's death and about two years after the date of the deeds which were sought to be set aside. The proceeding was terminated by the decree of the Common Pleas Court of Lancaster County filed on August 4, 1944, in which the Hon. Joseph B. Wissler directed that plaintiff's bill in equity be dismissed and that the costs of this proceedings be paid by the L. R. Reist Estate. The opinion of Judge Wissler is reported in 49 Lanc. 203. The court costs in the equity suit, amounting to $255.25, were paid and credit therefor taken in the account which is now before this court for audit. Attorney fees are not costs: 1 Hunter Orphans' Court Commonplace Book 74.

If the allegations in the bill of complaint in the equity suit were sustained and the two deeds for the real estate had been set aside, the value of the real estate would have accrued to the estate of Linnaeus R. Reist. Whether or not such value would have increased the value of the estate of Linnaeus R. Reist we have no means of ascertaining, for upon the receipt of the consideration for the sale of the real estate the grantor apparently paid certain obligations, and it would appear that also the cash payments made by Linn L. Reist, aggregating over $20,000, would have to be repaid to him.

The present decedent seems to have been 89 years of age at the time of his death and while as a young man he had been sturdy, vigorous and occupied a prominent place in the political and banking and business life of the community, in the latter and terminal years of his life he was afflicted by the usual gradually increasing infirmities of age. All this was known to the three principal beneficiaries under his will (being parties to the proceedings in equity) at about the time the will was dated, the deeds were executed and the codicil to the will was executed.

There seems, in the opinion of this court, to be some inconsistency on the part of John L. Reist to participate in the probating of his father's will and codicil, at which time the subscribing witnesses thereto made the affidavit as such subscribing witnesses above referred to and thereafter to proceed with the liquidation and settlement of an estate in accordance with the terms of such will, inferring at least by his actions that his father was of sound and disposing mind, not only at the time he made his will, but at the time he executed the codicil and then thereafter not directly attacking the validity of the will, but within some months after the probating of the will, making an effort to set aside the two deeds above referred to by proceeding in equity in the common pleas court on the grounds of mental

and physical incapacity on the part of his father. In the probate of the will and codicil, and administration of the estate he says his father was competent. In the equity proceeding he maintains his father was incompetent. He blows both hot and cold. The common pleas court held his father was competent.

In support of the present claim for counsel fees a brief has been submitted to this court citing many cases, all of which have been carefully reviewed and considered by this court.

In Moorhead v. Scovel, 210 Pa. 446, there was a bill in equity filed by the administrator et al. to set aside a deed on the grounds of the weak mental and physical condition of the decedent and lack of capacity. A decree in favor of the appellant in the lower court was reversed upon appeal, the costs to be paid by the appellees. In this case we find no reference to the payment of attorney fees.

In Thorndell v. Munn, 298 Pa. 1, there was a bill in equity filed by the administratrix and the residuary legatee to set aside a gift of bank stock. On appeal the bill was dismissed at plaintiff's costs, and nothing said about the payment of attorney fees.

The foregoing two cases are cited in support of the proposition that representatives of the decedent's estate may bring actions.

In Foulke's Estate, 334 Pa. 186, a co-executor had disputes with the other executor who advised him to obtain separate counsel in connection with exceptions to the adjudication of the orphans' court. Each executor had filed an inventory and account. The orphans' court thereupon allowed an attorney's fee to the co-executor's counsel for their services, which was objected to, the court saying (p. 189) :

"*Appellant himself had advised his sister to obtain separate counsel.* The record indicates that the services performed by her attorneys were rendered to Mrs. Cregar in her capacity as co-executor and not, as ap-

pellant claims, in her capacity as a beneficiary under the will. The auditing judge, after hearing testimony, found that the services were reasonably worth $2,000, and there is no reason to disturb that finding here. 'This court has frequently held that the allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error': Rambo's Estate, 327 Pa. 258, 266." (Italics supplied.)

In Manderson's Estate, 25 Dist. R. 569, 570 (1916), apparently there were two trustees, one of whom was active and whose attorney stated an account as the joint account of both trustees and was allowed a counsel fee of $1,000. The Orphans' Court of Philadelphia County filed an adjudication. On behalf of the co-trustee exceptions were filed to the court's construction of the will, which were dismissed. The attorney for the exceptant trustee asked the court for an allowance for an attorney fee of $250. Judge Gest allowed a fee of $150 and said on page 570 of the report:

"We think, however, that the counsel for the exceptant is entitled to a reasonable compensation for the services he rendered to her, especially in view of the interpretation of the will adopted in the adjudication of Jan. 13, 1908, *which justified the filing of the exceptions relating to the construction of the will.* The determination of the amount of the fee would be ordinarily for adjudication by the auditing judge, but, inasmuch as we have all the parties before us, it seems unnecessary to recommit the adjudication for that purpose. We have concluded that a counsel fee of $150 to be paid from the principal of the estate for the benefit of which the services were rendered would be reasonable and the same is now allowed." (Italics supplied.)

In Fox's Appeal, 125 Pa. 518, there were serious controversies relating to the several accounts filed by the different executors who were represented by dif-

ferent attorneys, who presented individual bills for counsel fees. The question was raised how far such services were required for the mere purpose of the settlement of the estate, outside of personal considerations affecting only the executors, and how far, therefore, compensation should come from the estate and not from the executors individually. There was want of harmony between the executors and the dispute between them with regard to matters which concerned them simply as individuals had much to do with the difficulties experienced by counsel in the settlement of their accounts as executors, for which reason several counsel were employed as appears by the report of the auditing judge. He said (p. 520):

"It would be doing manifest injustice to the eight other persons, interested as distributees in the estate, to throw upon them an undue share of the expenses thus occasioned. In the opinion of the auditing judge, the sum of $500 is as much as can be charged against the estate for the services of Mr. Fox; for anything beyond that the persons by whom he was employed must be looked to individually." (Mr. Fox had originally claimed the sum of $1,000 as counsel fee.)

Counsel for another executor requested a fee of $2,000, on which an allowance of $550 was made. On appeal in a per curiam opinion the Supreme Court said:

"It was practically conceded that the professional services rendered by appellant at the request of the executors, were worth fully as much as he claimed, but it was contended that a considerable portion of those services were for the personal benefit of the executors themselves, and therefore not properly chargeable to the estate. There was evidence tending to prove that fact, and the learned auditing judge undertook to determine what proportion thereof should be charged to the estate; and, having done so, that amount was allowed without prejudice to appellant's claim against the executors individually for services

rendered for their personal benefit. The facts were found by the auditing judge and approved by the court."

The appeal was dismissed.

In Kennedy's Estate, 328 Pa. 193, there were four executors, two sisters and two brothers. The brothers asserted claims of $185,874.83, which were rejected when they were objected to by the sisters. The court said that the sisters in their representative character as executrices, were allowed to employ counsel to represent them and to charge the estate with the costs thereof. The claims made by the brothers had been rejected by the decree of the Supreme Court made in Kennedy's Estate, as reported in 321 Pa. 225 (1936).

In Daisz's Estate, 6 Lanc. 177, affirmed in 128 Pa. 572, there were three executors who were also devisees, and disputes arose as to the title to properties which apparently belonged to the estate but was claimed by them individually. It was held by the auditor appointed by the orphans' court of this county that the separate counsel employed by two of them should be paid from the estate. No exceptions were filed to this allowance and the question was not passed upon by the Supreme Court.

In Groff's Estate, 215 Pa. 586, the executors were the defendants in five separate actions. The executors did not institute the actions and upon the filing of their account exceptions were made for the credit of fees to the attorneys for the executors in defending their actions. In dismissing the exceptions Judge Smith, president judge of this court at that time, said as reported in 215 Pa. 586, on page 589, wherein his opinion is recited when the Supreme Court affirmed his decree:

"That executors may employ counsel will not be disputed, nor will their authority to sue and defend against suits be questioned, and when they act in good faith under the advice of counsel they are generally relieved from personal liability. If an administrator acts in good faith, as a cautious, prudent man would do

under similar circumstances, although the consequences may be bad, he will not be surcharged": citing Allam's Estate, 199 Pa. 573. In Allam's Estate it appears that the administrator operated the decedent's business.

In Ammon's Appeal, 31 Pa. 311, a case in which the administrator is sued, the syllabus reads:

"An administrator who, in good faith, litigates a claim against the estate of his intestate, is entitled to credit in his administration account for the costs and expenses of the litigation, including the amount paid for counsel fees; and also to an allowance for his time and trouble."

In Ketler's Estate, 14 W. N. C. 76 (1883), exceptions were filed to a credit for $401 for counsel fees paid by the administratrix in a proceeding brought to recover from a son-in-law who had been the decedent's partner, moneys alleged to be due to the estate from the firm. The proceeding failed to make any recovery. Penrose, Judge, said on page 77:

"If the accountant acted honestly, and under the advice of counsel, she is entitled to credit for proper and reasonable counsel fees. As the facts with regard to the credit disallowed are not stated, we are unable to determine as to its propriety, and the account must be remitted to the auditing judge for further report and proceeding."

Judge Penrose further said:

"It is the duty of the administrator to collect the debts due the estate, and his right to employ the means requisite for this purpose is a necessary result."

In Smith's Estate, 1 Dist. R. 314 (1892), the question was to decide whether stock in the trust estate belonged to principal or income, which Judge Ferguson said was a novel question and one which the administrator was fully justified in raising. The question was elaborately argued before the auditing judge, the court en banc, the Supreme Court on appeal and also upon motion for reargument. The allowance of an attorney

fee was objected to, although the amount was not disputed, the question being whether it should be paid out of the estate. It appears that the administrator commenced and carried on the litigation under the advice of counsel, but was unsuccessful. The widow agreed that her share in the fee should be charged with her proportion of it, namely, one third, but the other two thirds were charged against the administrator. On page 315 of the report, Judge Ferguson referring to the administrator, said:

"He represented the estate of the decedent, and all interested in it, whether creditor, widow, or children. He had no right to discriminate as to what might be to the interests of one as against the other. His duty was to the estate considered as a whole. One of his paramount duties was to collect the assets of the estate, and this necessarily involved the right to use all necessary means for that purpose, and to incur any proper cost and expense. Here was a supposed asset which the administrator was advised it was his duty to secure, and he made the attempt. . . . Did he act in good faith in the matter the same as any prudent man would have done in his own affair? This is the test. If he did so act, he did only what the law required of him, and it would be a great hardship if he should now be mulcted with a penalty for doing his duty. Few administrators would take the risk of suits if they were required to pay the costs if unsuccessful, and estates would thus often suffer by reason of their rights not being properly enforced. Administrators are not to act recklessly, to bring suits for desperate claims, to waste money on suits against those hopelessly insolvent, nor litigate for malice or resentment only, but if they act in good faith, under the advice of counsel, as in this case, they will not be held personally responsible in case of loss (citing cases)."

The arguments in the support of the present claim narrow down to the contention that the equity suit

was brought by plaintiffs upon the advice of counsel, and, having so acted, the question of honesty, sincerity or good faith on the part of plaintiffs attempting to act for the interest of the estate is not stressed. This has not been shown to the satisfaction of this court. In the opinion of this court such a claim must be substantiated by more than the bare statement of the counsel for plaintiffs that he advised the bringing of the suit on the basis of the facts as submitted to him by plaintiffs. When the claim for counsel fees were made before this court, plaintiffs in the equity suit did not present themselves for an examination or interrogation as to the facts which they submitted to their counsel (nor their motive in bringing that proceeding), although it may be inferred that on the basis of those facts, which plaintiffs submitted to this counsel, the bill of equity was filed and the proceeding was had. However, the proof of the facts as alleged in the bill of equity were found to be insufficient to sustain the allegations and a decree was entered in favor of defendant in that proceeding. It is a matter of observation in this court that in another proceeding there was not a cordial relationship existing between plaintiffs and defendant in the equity suit.

No testimony whatever has been offered to show whether or not the professional services, for which the present bill is rendered, were supplied to individual plaintiffs or to fiduciary plaintiffs, nor any testimony to show whether any amount should be apportioned between the different plaintiffs, as was done in Fox Estate, supra. The claim for the whole amount is made against this estate. The principles of law governing such a claim as set forth in the cases all above recited are very succinctly set forth in Judge Ferguson's opinion in Smith's Estate, 1 Dist. R., at page 315, in language heretofore recited, but which for emphasis is again repeated:

"Administrators are not to act recklessly, to bring suits for desperate claims, to waste money on suits against those hopelessly insolvent, nor litigate for malice or resentment only, but if they act in good faith, under the advice of counsel, as is this case, they will not be held personally responsible in case of loss."

On the question of whether plaintiffs litigated for malice or resentment only or for the purpose of harassing the defendant in the suit, or whether they acted in good faith or as any prudent man would have done in his own affairs, no testimony has been submitted to this court. The statement has been made that plaintiffs did consult counsel who advised the bringing of the equity proceeding. But no matter how much this court respects the opinion of the counsel of plaintiffs in this matter, such opinion being only the opinion of the counsel is not in itself conclusive. The opinion of this court must be based upon such facts as are before it and of which it has information from its records. Taking into consideration the averments in the bill of equity and its conclusion and the apparent strained personal relations between the parties thereto, there can exist no presumption of good faith on the part of plaintiffs therein, which accordingly must be shown by testimony in the same manner as any other disputed fact. As hereinbefore stated plaintiffs in the equity proceeding did not appear before the court as to their good faith in instituting the proceeding, to be examined and interrogated in reference thereto. It does not seem sufficient to this court that John L. Reist, one of the plaintiffs in the equity proceeding, as one of the executors, approved of his counsels' bill in writing and ordered it to be paid by the estate.

Bearing upon this question of the good faith of plaintiffs in the equity proceeding may be mentioned the following:

Plaintiff fiduciary knew of the execution of the deeds for the properties and of the conveyance of the proper-

ties shortly after their execution and delivery, which was almost a year before the death of his father, and waited until his father died and thereafter for approximately 10 months before instituting the proceeding. Plaintiff fiduciary knew of the publication of the codicil to the will in which the two conveyances were ratified and confirmed at least at the time when the codicil with the will was probated and thereafter waited almost 10 months before instituting the equity proceeding. He aided and participated in the probate of this will and the codicil thereto and at that time raised no question as to the testamentary capacity of his father. He is presumed to know that a person may do with his own property and make disposition of it as he will under certain well-known limitations. It is indisputable that under such limitations the father could have given the property to defendant in the equity proceeding without consideration, or could have devised it to him in his will. Would an utter lack of consideration in any of the conveyances be avoidable by such a proceeding in equity when subsequently and in so short a time thereafter the testator in his codicil ratified and confirmed the conveyance which plaintiffs must be taken to admit was executed at a time when the testator was of sound mind, memory and understanding and had testamentary capacity? There is an absence of any contest as to the question of undue influence at the time of the execution of the codicil, which must be conceded to be entirely regular and controlling in the question before this court. The execution of this codicil was considered by the common pleas court in the equity proceeding, but its legal effect was not the sole determining reason by which that court reached its conclusion. The provisions of this codicil do seem to this court to have considerable bearing on the question of the good faith of plaintiffs in instituting that proceeding when they made no effort to disprove the validity and legal consequences of the codicil.

Some reference may be made to that part of the evidence offered in the equity proceeding in which John L. Landis sought to qualify himself as a witness by producing an assignment from himself (executed before the date of decedent's death) to a bank covering his entire expectant interest in the decedent's estate as security for an indebtedness to that bank of approximately $78,000. For the reasons set forth in his opinion, Judge Wissler held that this assignment did not qualify John L. Landis to be a competent witness.

It is the considered opinion of this court that the attitude of plaintiffs in the equity proceeding in instituting that proceeding does not fully measure up to the standard of honesty, sincerity, prudence or good faith required by the opinions of the court hereinabove referred to in such manner as to warrant their attorneys to be paid the present claim from the assets of this estate. Whether the equity proceedings were instituted and prosecuted as a "fishing expedition" on their part, or whether it was done simply to harass and annoy plaintiffs' brother, we have no means of knowing because plaintiffs did not submit themselves to an examination on this point before this court at this audit in support of the claim. There undoubtedly existed a strained and somewhat unfriendly relationship in any aspect of the case between plaintiffs and defendant. When the results of the equity proceeding and the other facts herein set forth are considered, this court is not warranted to allow the funds of the estate to be diminished by the payment of the attorney fee to the counsel employed by plaintiffs—these attorneys incidently being the same attorneys employed as counsel in the general administration of the estate under the provisions of a will and codicil thereto which in itself must be a conclusive answer to the allegations in the bill in equity.

It must be appreciated that the institution and prosecution of the equity proceeding undoubtedly put de-

fendant therein to large expenses on his part, not only of his own time and trouble but for his own counsel fees, no part of which can come out of the estate, as well as to cause him serious embarrassment amongst his friends and neighbors by the somewhat scandalous, unfounded and untrue allegations of the bill of equity. It would seem unjust and unfair and a miscarriage of justice at this time now to cause some part of the defendant's beneficial interest in this estate to be diminished by a proportionate share in the payment of his adverse counsel fees in addition to his proportionate share of a large sum on account of court costs in the equity suit which were allowed by the Common Pleas Court. If this claim for counsel fees were to be allowed, then plaintiffs in the equity proceeding would individually suffer no pecuniary loss. Any person bringing proceedings of a similar character must contemplate a possible liability for payment not only of costs but his attorney fees. In the opinion of this court were such a claim as is now presented to be allowed a most unfortunate precedent would be established in which defeated litigants having everything to gain and nothing to lose, would take what many people would consider a long-shot gamble.

Finally, it appears to this court that the equity proceeding was prosecuted as a result of the personal disputes and differences between John L. Reist and his brother, Linn L. Reist. The interest of each of them in the fund before the court for audit is to receive one third of the income from the trust fund. Upon the death of the beneficiaries of the trust fund for life the principal of this trust fund is, under the will of L. R. Reist, to be awarded to the testator's grandchildren per capita. These grandchildren are presently unascertained and were not represented at the audit when the claim for attorneys' fees was presented. In the present

circumstances there is no contention or allegation that, by reason of the employment of Messrs. Arnold and Bricker for a special purpose by John L. Reist, the trust estate was benefited or increased in any manner. In fact, the amount of money for distribution in the estate has already been diminished by the payment of the court costs hereinbefore referred to, as was directed by the common pleas court. To this court it seems unfair and unjust that the ultimate shares of the unascertained and unrepresented grandchildren or their descendants should be further diminished and reduced by reason of disputes or disagreements which may exist between their respective parents, especially when a fair and frank discussion and disclosure of certain facts by Linn L. Reist to John L. Reist, information to which in all fairness he was entitled to have, apparently would have avoided the equity proceedings which Linn L. Reist in effect invited. It appears in the notes of audit that at a conference to discuss the matter under consideration and in dispute Linn L. Reist said that he had no explanation whatever to offer, that the record spoke for itself, and that if there were any explanations to be made he would make them in court. It appears that a written agreement (for support and maintenance) existed as a basis of consideration for the conveyance of the farm, which was not disclosed until after the equity proceeding was instituted.

Nothing herein said is any reflection on the Messrs. Arnold and Bricker. They appear to have acted honestly in the face of inaccurate and untrue information given to them by plaintiffs, which was not supported by sufficient credible testimony.

The claim of Messrs. Arnold and Bricker against this estate for special services rendered to John L. Reist et al. in the equity proceeding is disallowed.

*Opinion sur exceptions*

APPEL, P. J., October 3, 1945.—Exceptions to the adjudication of this court filed on June 14, 1945, by Messrs. Arnold and Bricker, whose claim against the estate the court disallowed are before the court for consideration and disposition. In support of the exceptions claimants have presented a petition for a rehearing "so that they may be in a position to produce testimony of said John L. Reist and such other witnesses which, in the opinion of the claimants, will demonstrate the good faith of the said proceeding". Upon the presentation of the petition for rehearing the court granted a rule to show cause why the prayer of the petition should not be granted. Subsequently said rule was made absolute and a hearing was had.

This court filed an opinion accompanying its adjudication in which it disallowed the claim of Messrs. Arnold and Bricker for professional services rendered as counsel for plaintiffs in equity suit entitled "John L. Reist, individually and as one of the executors and one of the residuary trustees under the will of Linneaus R. Reist, also known as L. R. Reist, deceased, plaintiff, and Anna Reist Baird, intervening plaintiff, against Linneaus Landis Reist, also known as Linn L. Reist, defendant, in the Court of Common Pleas of Lancaster County sitting in Equity, Equity Docket No. 9, Page 194". The nature of the proceeding in equity in connection with which Messrs. Arnold and Bricker rendered services, is fully set forth therein.

At the rehearing which was fixed by the court more particularly to hear such testimony as John L. Reist might offer in support of the contention of Messrs. Arnold and Bricker, that as one of the plaintiffs in the bill in equity John L. Reist acted in good faith, Harris C. Arnold, Esquire, a member of this bar and a member of the firm of Arnold and Bricker, stated that John L. Reist refused to appear at the hearing, and

he did not appear and testify. Mr. Arnold testified at length in the manner as appears in the notes of the hearing. His testimony was in narrative form and related to conferences with the decedent, as to his testamentary intention as expressed in a will and a codicil drawn by Mr. Arnold (which, however, were superseded by later wills and codicils) the physical and mental condition of the decedent, a rehearsal of certain facts which John L. Reist presented to him in various conferences, the results of certain investigations he had made personally, and generally much which might come under the head of hearsay evidence, and expression of his opinions as to the good faith of John L. Reist in bringing the equity action. This narration made disclosure of certain facts and circumstances which occurred both during the lifetime of the decedent and subsequent to his death. Objection was made to the competency of this witness as to certain of his testimony and also to the relevancy of his testimony to the matter then under consideration. This court reserved its decision on the objections and allowed the witness to testify at will and so make his record. This testimony has been thoroughly analyzed and considered. However, without formally deciding the question of the competency or incompetency of the witness as to certain parts of his narration and the relevancy or irrelevancy of certain parts of his testimony, considering his narration as a whole, nothing which he has said has changed the opinion of this court from that expressed in its prior opinion.

Mr. Arnold stated that he was consulted by John L. Reist as to matters set forth in the bill in equity in the lifetime of his father and it was explained to him what procedure would be necessary to challenge the conveyances which were the subject of the bill in equity, and Mr. Reist refused to carry out the proceeding as described by Mr. Arnold against his father. Therefore,

according to the records, he waited until his father had died, and thereafter for a period of a year, before bringing the action against his brother. This bill sets forth certain averments which Mr. Arnold believed to be true and on the basis of information given him by Mr. Reist he acted on good faith, but the proof he offered in support of the averments in the bill apparently did not warrant the common pleas court in decreeing the relief prayed for. The opinion of this court disallowing the bill for services directly challenged John L. Reist to submit to it an examination as to his good faith in the equity proceeding and he refused to appear in this court and submit to such examination.

Considering the exceptions:

Exception no. 1 is to the refusal of the court to allow the claim for counsel fees as presented at the audit.

Exception no. 2. Exception taken because the court does not set forth the claim as it was presented with respect to the original caption of the suit in the common pleas court therein referred to. An examination of the record shows that the claim was presented for services rendered to John L. Reist, one of the executors of the will, etc., plaintiff. This caption was amended in the form set forth by this court hereinabove referred to, and in the amended form of the caption the equity suit was adjudicated by the common pleas court on the basis of the amendment, and not on the basis of the original caption. When or why the amended caption was made in the court of common pleas is immaterial to this court, but the fact remains that the equity suit was prosecuted to judgment in the final form of the caption and not in the original form. There was only one equity suit. There was only one decree and judgment which was final. It adjudicated the claims of the parties named in the amended caption, and it must be taken that the services of Messrs. Arnold and Bricker were rendered

to all plaintiffs mentioned in the caption. It does not seem to this court that claimant may now contend that the services were rendered solely to John L. Reist, as executor, when John L. Reist, individually, and his sister, Anna Reist Baird, were also named as parties in the caption as amended without some inquiry being made into the motive of John L. Reist becoming a party plaintiff and thereby to create an obligation on the part of the estate.

Claimant contends that the court erred in finding "and it would appear that also the cash payments made by Linn L. Reist, aggregating over $20,000, would have to be repaid to him". The argument was not over the exact sum of $20,000, but the point is made that whatever consideration Linneaus L. Reist had paid to his father would have to be refunded to him in the event that the conveyances were set aside. There were two conveyances. The one for a mansion house and appurtenant buildings, the deed for which bore $3.50 worth of stamps. The other deed was for the remaining farm and the consideration for which was $17,500. The exact amount of cash which passed is immaterial in this proceeding.

Claimant contends, "Therefore the record before this court conclusively shows that if the equity suit had been successful it would have increased the estate." That is a non sequitur. The equity suit arguendo might have been successful, but then the alleged inadequate consideration, whatever the consideration was, would have to be refunded to the grantee and any subsequent increase to the estate would have arisen only out of a fortunate and advantagous sale of the real estate. It appears that the values of the real estate in the equity suit were not established by any public sale, but were estimates furnished by appraisers and must not be taken as if they were the equivalent of an offer to purchase. Furthermore, there were disagreements amongst the appraisers as to their estimated values.

Whether, therefore, the estate would have been increased by the success of the equity suit is purely a matter of speculation and is not as conclusive as claimant argues. Moreover, from the proceeds of the sale, the decedent had paid obligations in the amount of $10,000, which to a man of his years may have seemed desirable.

Claimant contends that the records submitted at the audit and at the supplementary hearing on the question of the good faith of John L. Reist are self-sustaining, and proves that good faith which was essential to establish the claim. He calls the attention of this Court to certain pages of the testimony in the record of the hearing in the equity suit, but on those records the matters were adjudicated by the common pleas court and it is res adjudicata so far as this court is concerned. John L. Reist was not a witness in the equity proceeding. He would have been a competent witness as to the question of his good faith in this court, which extended to him the privilege of appearing and testifying at a special hearing fixed for that purpose. This he refused to do. He was an executor in this estate and cannot place the burden on his counsel alone to testify as to his good faith and to argue from implications and inferences from the testimony that he acted in good faith. Claimant argues that the equity suit contained no attempt to assert or prove that Linneaus R. Reist did not know what he was doing when he signed the deed. It did endeavor to show that he was in such mental and physical condition that he was likely to be the victim of designing persons, and that he had been made the victim, but they did not attempt to say he was not fit to make a deed if free from undue pressure or persuasion. From which claimant argues that there was no inconsistency in probating his codicil and his will. He admits that it requires less capacity to make a valid will than to make a deed or other gift inter vivos.

It appears to this court that ordinarily in the absence of a will relating to the conveyances, it might have been possible to have set aside conveyances on proper testimony, but that where the conveyances are followed by the execution of a will which ratifies and confirms the conveyances, the ratification by will of the conveyances removes all doubt as to the validity of the original conveyances. Any defects surrounding the original conveyances must be held to be cured by a will. That is to say, if a defect existed which made the execution and delivery of the deed either void or voidable, a certain right or power remained and resided in the grantor to avoid his deed and such power existed on the part of such persons, who, by proper authority, were appointed to stand in the place of the grantor and take the necessary proceedings to avoid the conveyances in grantor's lifetime. The execution, therefore, of an admittedly valid subsequent will or codicil by the grantor in effect transfers from him and those claiming under him the power to avoid the conveyances when the will is properly probated.

This is similar in effect to a situation where by proper deed a conveyance was made in which there was a reversion to the grantor under certain conditions. Thereafter by a will this reversion was devised to the grantee. The devise would be undoubtedly lawful if the will were uncontested.

John L. Reist, as testified by claimant, was unwilling to attempt to have a guardian appointed for his father and to upset these conveyances in his father's lifetime. He waited until his father died before instituting the equity proceeding. He participated in the probate of his father's will and codicil, ratifying and confirming the conveyance. This codicil admittedly requires less capacity on the part of the testator than to make a deed or other gift inter vivos. Then he challenged the conveyances without having raised any question as to the devise in the codicil. As stated in the court's former

opinion disallowing the claim, there exists a great inconsistency on the part of John L. Reist. This apparent inconsistency he refused to clarify by personal testimony.

Claimant contends that this court may not take judicial notice in one case of facts which are in evidence in another proceeding, even though in the same court, and that the court may not look to the records of other cases, even though in the same court, even if that record is within the personal knowledge of the judge. The cases cited by claimant in support of his theory may sustain his contention in the facts set forth in the cases involved. The facts and records in those cases, however, do not raise the question of good faith and that question has been raised in the present case. In the settlement of the estate of the wife of this testator in this court, John L. Reist and Linn L. Reist were the executors. It was a fact, in the settlement of that estate brought to the attention of this court while the settlement of this estate was in progress that the executors were not acting harmoniously, and disputes, contentions and arguments were before the bar of this court. There did exist considerable difference and feelings between John L. Reist and Linn L. Reist, at least bordering on the state of bad feelings. Ample opportunity was given to John L. Reist to appear before this court in this proceeding and personally testify. He did not do so and gave to this court no reason for his refusal. Moreover, he is an executor and under the control of this court. He voluntarily became a plaintiff to the equity proceeding without authority or direction of this court.

If this court was in error, as contended by exceptants, in referring to information or knowledge which it had dehors this record and from personal observation to an apparent animosity or bad feeling existing between the two executors, and John L. Reist refused to

appear in court and submit to any examination in that connection, when the question of good faith was put in issue, such contention of error on the part of the court cannot be maintained. The nature and character of the bill in equity, the averments therein and the remedy sought thereby, instituted by John L. Reist against his brother individually, indicates the strained personal relationship between the parties. There was a burden upon John L. Reist, in support of this claim, to show that he did not "litigate for malice or resentment only". The delay in bringing the bill in equity, and its adverse conclusions, the apparent inconsistency in probating the will and codicil and then contesting the validity of the conveyances which had been ratified by the codicil, and the apparent strained relationship which existed between the executors, all seem to indicate that the services rendered by Messrs. Arnold and Bricker to John L. Reist were not performed solely for the benefit of the estate in behalf of a litigant who acted entirely in good faith, without malice or resentment, "as any prudent man would have acted in his own affairs."

The decedent's will and codicil, after providing for certain trust estates, directs his estate to be distributed to his grandchildren per capita. Such grandchildren, either in being or in posse, were not represented at the audit. This court appointed F. Lyman Windolph, Esq., guardian ad litem for such grandchildren and trustee ad litem for grandchildren in posse. He appeared and performed the duties of his office at the rehearing and likewise objected to the allowance of the claim of Messrs. Arnold and Bricker for attorney fees as presented.

Neither by argument or testimony has the opinion of this court been changed from the time it filed its adjudication of the present claim.

The exceptions are dismissed. The adjudication heretofore filed will be modified to such extent as to allow the guardian and the trustee the sum of $100 for

his services, which is hereby awarded to him, and the awards of the residuary estate will be modified accordingly.