Gothic et al., Appellants, *v.* Smyser.

Argued September 11, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Richard W. Cleckner,* with him *Nissley, Cleckner & Fearan,* for appellants.

*J. Boyd Landis,* with him *Landis and McIntosh,* for appellees.

OPINION BY WOODSIDE, J., March 18, 1959:

This is an appeal from the final decree of the Court of Common Pleas of Cumberland County sitting in equity.

The plaintiffs, Jack F. Gothie and Sarah U. Gothie, his wife, filed a complaint for injunctive relief March 20, 1957, alleging a written agreement between themselves and the defendants, William E. Smyser and Eleanor M. Smyser, his wife, in which the plaintiffs agreed to sell to the defendants certain real estate in Mechanicsburg. The premises included a barroom, and a retail liquor license over which the plaintiffs seemed to have some control was transferred to the defendants from a third party.

The agreement provided for a consideration of $17,250, to be paid in monthly installments of $100 per month for a period of six months and the balance at the rate of $150 per month until the principal amount, together with interest at 6% thereon, was paid. The first $100 payment was due at the execution of the agreement which was dated March 13, 1956. The defendants gave the plaintiffs a demand note in the principal amount of $17,250 as collateral to the sales agreement. The agreement provided for the entire $17,250 to be due and payable upon default, and also provided that the plaintiffs might, after notice, repossess the retail liquor license upon default.

No payment of $100 was made at the time of the execution of the agreement, but six payments of $100 each were made during the six months, from April to

September inclusive, following the agreement. Between September 6, 1956, and October 12th, defendants requested the plaintiff-husband to reduce the amount of the forthcoming payments from $150 to $100, which Jack Gothie refused to do.

A day or two before October 12, 1956, defendant William Smyser informed Jack Gothie that he knew a man who would pay $13,000 for the real estate, and asked Gothie if he would consider that offer. Gothie consulted with Mrs. Gothie immediately and then went to William G. Magaro, the purchaser Smyser had mentioned. On October 12th, Gothie and his wife entered into an agreement to sell the real estate to Magaro for $13,000, $1000 to be paid at the signing of the agreement and the balance to be paid on or before October 27, 1956. The defendants signed this agreement. On October 22nd, the plaintiffs and the defendants conveyed the real estate to Magaro and the plaintiffs received the purchase money in cash. During the negotiations Jack Gothie stated that the defendants would be glad to sign the deed "because they would be glad to get out from under it".

On December 3, 1956, the plaintiffs entered judgment against the defendants for $4,250 on the judgment note given as collateral for the sales agreement of March 13, 1956. The plaintiffs then brought this action in equity to restrain the sale of the defendants' liquor license. The defendants obtained a rule to show cause why the judgment should not be opened and they permitted to make a defense.

At the hearing on the injunction, a stipulation was entered into by the plaintiffs and defendants, by the terms of which the defendants deposited in escrow $4,-250 of the purchase price of the liquor license, and a temporary injunction which had been granted by the court was dissolved. It was further stipulated that

the chancellor sitting in equity should take testimony to determine whether or not there had been a breach of the agreement of March 13, 1956, and, if so, the amount of damages due to the plaintiffs.

The chancellor found the facts to be substantially as we have outlined them above. He concluded that the defendants had defaulted in the terms of the contract by their failure to make the October payment, but that the plaintiffs were not entitled to any damages because the terms of resale were substantially less advantageous to a purchaser than the terms upon which the premises had been originally sold to the defendants. The court, therefore, entered a decree nisi, decreeing the plaintiffs entitled to no damages from the defendants and dismissing the plaintiffs' complaint, directing the amount held in escrow to be paid to the defendants, and directing the prothonotary to satisfy the judgment entered against the defendants.

The plaintiffs excepted to four of the chancellor's findings of fact and six of his conclusions of law. The court en banc dismissed the plaintiffs' exceptions to the findings of fact, and to three of his conclusions of law, but sustained the exceptions to the other three conclusions of law "because those conclusions are not applicable since the court en banc has determined that the defendants did not default under the terms of the contract of March 13, 1956".

The court en banc then made the following additional finding of fact: "18. It may fairly be inferred from the words and actions of the plaintiff, Jack F. Gothie, that she assented to the contract of October 12, 1956 being substituted for the contract of March 13, 1956, and the discharge of the defendants from their obligations under the latter contract, and it is so found as a fact." The court revoked conclusion of law No. 1, which held that the defendants were in de-

fault because they had not made any payments due after the first week of September, 1956, and substituted new conclusions of law, holding that the defendants did not default in the terms of the sales contract of March 13, 1956; and that the contract of October 12, 1956, was a novation discharging the defendants from their duty to the plaintiffs under the terms of the contract of March 13, 1956. A final decree was entered dismissing the plaintiffs' complaint, directing the sum in escrow to be paid to the defendants, and directing the prothonotary to satisfy the judgment entered on the record by the plaintiffs and against the defendants. Plaintiffs have appealed from this decree.

The plaintiffs contend that the court en banc sitting in equity had no power to alter the conclusions of law to which no exception was taken by either the plaintiffs or the defendants. They base this argument upon Equity Rule No. 1518, which provides: "(a) Within twenty (20) days after notice of the filing of the adjudication, exceptions may be filed by any party to rulings on objections to evidence, to findings of fact, to conclusions of law, to the decree nisi, and to a failure or refusal to find any matter of fact or law substantially as requested. Matters not covered by exceptions are deemed waived, unless, prior to final decree, upon cause shown leave is granted to file exceptions covering such matters."

The question before this Court, therefore, is whether the above rule would prevent the court below en banc from affirming the chancellor's decree nisi on the basis of conclusions of law different from the conclusions upon which the decree nisi was based and to which no exceptions had been filed by the appellees.

The plaintiffs cite *Thorndell v. Munn*, 298 Pa. 1, 147 A. 848 (1929); *Schwartz v. Wesoky*, 281 Pa. 388,

126 A. 779 (1924); and *Himrod v. McFayden,* 283 Pa. 103, 128 A. 733 (1925). We have carefully reviewed these cases and conclude that they are not applicable to the present situation. In none of the cases was the successful party litigant required to file exceptions to a decree in his favor. It is important to note in the present case that the court en banc altered the chancellor's conclusions of law and dismissed the plaintiffs' exceptions to the chancellor's findings of fact, and the statement in *Himrod v. McFayden,* supra, "Where no exceptions have been taken to findings of fact, they are admitted;" is not applicable to the present case.

After an exhaustive search, we have been able to discover only one Pennsylvania case in which the findings of fact of the chancellor to which no exceptions were taken have been held binding upon the successful party. In *Allegheny Gas Co. v. Kemp,* 316 Pa. 97, 174 A. 289 (1934), the chancellor found the existence of an illegal conspiracy but, nevertheless, found in favor of one of the conspirators. The court en banc reversed the decree of the chancellor and, upon appeal, the Supreme Court stated: "To this finding, as one of fact, appellants did not except in the court below, though they did object to the legal conclusions drawn from it. In view of this it is not necessary to set forth in detail the facts regarding the conspiracy and the methods employed by appellants to wrongfully oust appellee from the rights acquired by them . . ." We believe this is not authority for appellant's position here.

There is a basic distinction which must be recognized between the chancellor's findings of fact and his conclusions of law. The court en banc and the appellate courts are in a position to determine, as well as the chancellor, the correctness of the chancellor's legal

conclusions. If the chancellor's decree nisi is correct upon the basis of the facts found, the court en banc should not be required to reverse the decree because of an erroneous legal conclusion by the chancellor. See *Blue Ridge Metal Mfg. Co. v. Proctor*, 327 Pa. 424, 432, 194 A. 559 (1937). In the present case, however, it does not appear that the appellants had any opportunity to argue before the court below the question of a novation. Such an opportunity should have been afforded the plaintiffs. We are, therefore, remanding the case.

Were this the only question here involved, we might dispose of the matter here. There is, however, a further question which we think should be disposed of by the court below. The chancellor found that the agreement entered into by the plaintiffs and the defendants provided that upon default in the terms of the agreement, after notice, the plaintiffs might repossess the retail liquor license. It does not appear in the record the exact manner in which the original transfer of the liquor license to the defendant took place. There is evidence, however, that the plaintiffs, although not formally a party to the transfer, took an active part in procuring the license for the defendants. The license is mentioned in the agreement of sale of the real estate between the Gothies and the Smysers. The escrow agreement between the Smysers and the prior licensee mentions the discharge of an obligation of the prior licensee to Mr. Gothie. There is evidence that Smyser received $13,500 from Magaro, at least part of which was for the license which it seems Gothie controlled in the transfer to Smyser. In order that this case can be equitably disposed of, the question of whether the plaintiffs procured the liquor license for the defendants and whether plaintiffs intended to release defendants from their rights to the license should

be determined by a specific finding of the chancellor. It can be determined from the record that the transactions involving the real estate and the transactions involving the liquor license are too closely related to properly dispose of the legal consequences of either without the consideration of both despite the fact that the written contracts were between different parties.

The case is remanded to the court below with direction to proceed in a manner not inconsistent with this opinion.