## HUNT *v.* MOORE.

1. An executor, defendant, cannot be a witness to charge himself, thereby discharging the land of a devisee, co-defendant, of the decedent's debts.
2. An executor, being a man of business, and a neighbour of a creditor of the decedent, who was an aged, weak, and illiterate woman, induced her to take his own bond in lieu of one creating a lien on the estate of a devisee, falsely representing the amount of the liens against his own estate. A court of equity would set aside the transaction, and hence she may sue on the original bond.
3. *Semble,* Such a false representation would have avoided the contract between persons in equal situations.—Per ROGERS, J.
   *Semble,* The mere payment to executor, by devisee, of the amount of decedent's debts, will not discharge the land; nor will a refusal to accept the amount, because it was paper money, impair the right of the creditor. Ibid.
4. Nor is ignorance as to the truth or falsehood of the assertion, in the person making it, of any consequence. Ibid.
5. Ignorance or mistake in law may afford some inference of imposition, though in itself it cannot be relieved against. Ibid.
6. *Semble,* One cannot take advantage of a release or discharge obtained through the fraud of a third person, even though he was not a party thereto.

ERROR to the Common Pleas of Bucks county.

*Dec.* 26.—This was an action against Moore, executor of Michener, and J. Michener, his devisee, made a defendant under the 34th section of the act of 1834, on a bond of testator. Defendant proved an acceptance of the bond of Moore, in consideration of that of Michener; receipts of money by Moore from Michener, the devisee, and refusal, by plaintiff, to receive it, being paper money; and then, under objection, proved admissions of Moore, that he had received from Michener money to pay this bond and discharge the land, and to corroborate other evidence of a loan by plaintiff to Moore. The plaintiff was eighty years old, unable to read or write, and was said not to be competent to transact business at the time of the alleged exchange. Devisee said he procured the interview between plaintiff and Moore, who had told her there were no liens on his property but $100, and that he had searched and could find none, which was false, the pro-

perty being in fact encumbered beyond its value.   The court submitted whether the bond was taken in satisfaction of that of decedent.   If so, whether she was of sound mind at the time, which would be a good defence, unless fraud was practised.   The weakness of mind, to relieve her, must be such as unfits her for the superintendence of her ordinary transactions.   If she was thus competent, the misrepresentation as to amount of liens would not be relieved against, nor could it be, on the ground of mistake.

The errors assigned were, 1st, as to the evidence of J. Moore; 2d and 3d, to the charge that the misrepresentations and fraud could not be relieved against.

*Dubois*, for plaintiff.—1st point, cited 3 Stark. Ev. 1063; Guin *v.* Albert, 5 Watts & Serg. 338; Wolf *v.* Fink, MSS. at Pittsburg.   2d, Weakness of mind and ignorance, taken advantage of by superior knowledge, will avoid.   Platt on Cov. 108–9; Wilson *v.* Bigger, 7 Watts & Serg. 111; 2 How. R. 43–45; Esp. N. P. Tit. Deceit; Leigh N. P. 1079, 1067, 1081; 8 Watts, 497.

*Ross*, contrà.—1st. It was competent.   Gilb. Ev. 120; Doug. 140; 1 Wm. Bl. 166.   Exception was too late.   2d. 8 Price Ex. R. 620; 1 Swanst. 329; Chit. Cont. 31; 1 Mad. Ch. 279; 1 Story Eq. 201, 206; 2 Kent, Com. 484; 12 E. 637.   Misrepresentation immaterial, for there was notice in law.   8 Cow. 195; Chit. Cont. 627; 1 Wend. 35; 10 Pet. 137; 10 Pick. 533; Wht. Selw. N. P. 73.

*Jan.* 9.   ROGERS, J., after stating the case.—The evidence (of receipt by Moore) was received on the supposition that it creates an equity in favour of the devisee; but how the fact of her refusal to accept paper instead of specie, can give an equity to one and prejudice the rights of the other, is not very apparent to my mind.   It is enough that bank notes had no value in her eyes, that she was not bound to receive any thing but gold and silver, and that it was the executor, and not to the devisee, to whom she had to look for her money.   She had nothing to do with any arrangement between the executor and the devisee, made for their own convenience; it does not appear that she took any part, or that she knew any thing about them.   But granting the evidence to be pertinent to the issue, can it be proved by the declarations of the executor, a party to the suit? He is excluded as well on the ground of policy as interest.   This is an inflexible rule, which we have lately had occasion to assert, in Wolf *v.* Fink, 1 Barr, 435.   There is no principle better settled, than that a party cannot be a witness in his own case, much less can

his declarations be received in evidence. Can it.be tolerated that the executor and devisee should be permitted to manufacture evidence to suit their own case, without even the sanction of an oath? If this be allowed, on any pretence whatever, there is an end to the administration of justice. The case itself shows the danger of such testimony; for the declarations of the executor, which were permitted to have so great an influence in the decision, were made to exculpate himself from a charge, as respects this very transaction, made by the respectable society of Christians, of which (if this account be true) he was an unworthy member. [His honour here stated the charge.]

To the first part of the proposition we see no objection; but from the last I totally dissent. It is not a case of suppressio veri, but of suggestio falsi, and by confounding the two classes of cases, which are entirely distinct, the court has fallen into error. It is a case of gross imposition and fraud. The plaintiff was a woman certainly of weak intellect, little conversant with business, could neither read nor write, and, moreover, had reached the advanced age of eighty years; the executor a man of business, in whom she naturally placed confidence. He, taking advantage of the influence necessarily resulting from their relations, induces her to agree to the exchange, falsely, basely representing, that his real estate was encumbered to the amount of $100, whereas, the lien against him being equal in value to his whole estate, the debt is lost, or greatly endangered. If the facts be as stated, can a court of equity hold this to be a valid exchange? And why should it be so? Because, says the·court, it was her folly. The liens were of record, and she ought to have searched for encumbrances. Can it be the law that we are to repose no confidence in each other, without being branded with the charge of folly, and losing the earnings of a lifetime? True, says the defendant, I told you a deliberate falsehood, but you ought not to have believed one word I·said. Had you searched the records, you would have discovered. it was all untrue. It was your folly to put confidence in the truth of a neighbour or friend. I can, therefore, with calm conscience pocket my ill-gotten gains. I never can, I never will, consent that any person shall be permitted, in this sort, to take advantage of his own wrong. Had he been silent merely, perhaps this plea would have availed him, although even in that case a court of equity would lay hold of slight circumstances to relieve a victim to such duplicity. No honest or honourable man would have concealed the extent of the encumbrances, under the circumstances in which these parties were placed. It falls within that large class of cases denominated, in the books, the suggestio falsi. Courts of equity always grant relief where there has been misrepresentation, and

confidence abused.   Where the party intentionally, or by design, mis-represents a material point, or produces a false impression, in order to mislead another, or to entrap or cheat him, in every such case there is a positive fraud, in the truest sense of the term.   There is an evil act with an evil intent; dolum malum ad circumveniendum; and the representation may be as well by deeds or acts, as by words; by arti-fices to mislead, as well as by positive assertions.   Whether the party thus misrepresenting a fact, knew it to be false, or made the assertion without knowing whether it was true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false.   And even if the party innocently misrepresents a fact by mistake, it is equally conclusive; for it operates as a surprise and imposition on the other party.   These are elementary principles, settled by numerous authorities, Story, Eq. 201. It is very true, that every wilful misrepresentation, even of a fact, will not avoid a contract upon the ground of fraud, if it be of such a nature that the other party had no right to place reliance on it, and it was his own folly to give credence to it; for courts of equity, like courts of law, do not aid parties who will not use their own sense and discretion upon matters of this sort.   Story, Eq. 209.   But all the cases put are exceptions to this rule in equity, grounded on natural justice and sound-morals, which requires the most scrupulous good faith, candour and truth, in all dealings whatever.   This case does not fall within any of the exceptions.   I am not disposed to enlarge the number.   It is ruled, that if an executor of a will should obtain a release from a legatee, upon a representation that she had no legacy left her by the will, which was false, James v. Dale, 1 Ver. 19 ; or if a devisee should obtain a release from the heir-at-law upon a representation that the will was duly executed, when it was not; in each of these cases the release might be set aside for fraud ; and yet, had the party resorted to the records, they would have discovered that the representation was false, and, according to the opinion of the learned judge who tried this cause, would not be entitled to relief.   And see Jones's Appeal, 8 Watts & Serg. 151.   It is said by the Chief Justice, that it is not incumbent on one person dealing with another, to treat him as a rogue, for that would require of him the highest and most exacted vigilance. It is in vain to deny, that this was a misrepresentation of a thing material, in regard to which one party placed trust and confidence in the other. It was not a mere matter of opinion, but the false assertion of a fact which, if it had been truly represented, would have prevented the contract from being entered into.   Equity will not interfere for th-

relief of a party who claim on the ground of a mistake of law, Good *v.* Herr, 7 Watts & Serg. 253 ; but even in that case it has never been doubted, that mistakes, or ignorance of the law, may give rise to a presumption that there has been undue influence, imposition, mental imbecility, surprise, or confidence abused; and where this expressly appears, equity will always relieve.   A court is never better employed than in enforcing the principles of honesty and good faith.   The court seems to rely on the position that the devisee is placed in a better situation than the executor.   The only evidence we have of this arises from the parties themselves, which may well give rise to some suspicion.   But granting the facts to be as claimed, yet I cannot bring myself to believe that this is clear of doubt.   There are grounds for believing that Moore was but the instrument of Michener ; that, in truth, it was a plan concocted between them ; that the executor was but the agent of the devisee.   Moore, so far as appears, had no interest in effecting the exchange ; it was altogether for the benefit of the devisee. It may be true that the devisee was not actually present when the last bond was given, although even in that there is some discrepancy in the evidence.   It was, however, in proof, that the devisee called to see the plaintiff immediately before the exchange ; for what purpose it is not difficult to conjecture.   The object was to get her to do something, but that is not stated.   He said if she would come to his house, he would take her to Moore ; and it is proved she did go to his house. One witness says, Michener told him he took her to Moore's, as he was dissatisfied with the situation of things ; that James Moore told her there was nothing on his property except a lien of $100 ; that he had searched the office and could find nothing more.   And yet this imbecile old woman is to lose her debt because she was ignorant of what the devisee was ignorant after diligent search.   From the evidence, the jury may believe that there was a conspiracy to defraud the plaintiff, and this certainly would be good ground for equitable relief. But be this as it may, if the jury believe that the false and fraudulent representations were such as charged, there is nothing in the way of the plaintiff's recovery.   On every principle of equity and fair dealing, the defendants cannot avail themselves of an exchange that has been induced by misrepresentation, imposition, undue influence, and misplaced confidence.

Judgment reversed, and a venire de novo awarded.