Myers, Appellant, *v.* Metropolitan Life Insurance Company.

Argued March 11, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Maurice Metzger,* of *Metzger & Wickersham,* for appellant.

*J. Dress Pannell,* for appellee.

OPINION BY KELLER, P. J., July 16, 1943:

This action of assumpsit was brought on April 22, 1937 by the plaintiff against the defendant insurance company to recover certain disability benefits alleged to be due him under two life insurance policies; and for the refund of premiums paid by him on those policies and on a third life policy.

The first two policies were issued on February 20, 1931 and February 24, 1931, for $10,000 and $5000, respectively, and each of them contained a supplementary contract, for which an additional annual premium of $3.82 per $1000 face amount of insurance was charged, which provided, in substance, that on receipt by the company of due proof that "the insured has, while said policy and this supplementary contract are in full force, ...... become totally disabled, as the result of bodily injury or disease *occurring* after the issuance of said policy, ......," the company during the continuance of such disability would (1) waive the payment of premiums under said policy and supplementary contract; and (2) pay to the insured a monthly income of $10 for each $1000 of face amount of said policy.

The third policy, dated November 3, 1932, was for $5000, and contained a supplementary contract, for which an additional annual premium of $5.05 was charged, which provided, in substance, that upon receipt of due proof in writing of the insured's "total and permanent disability which resulted from bodily injury sustained, or disease *commencing,* after the issuance of this supplementary contract", the company would, during the continuance of such disability, waive the payment of premiums due under said policy and the supplementary contract.

The plaintiff's statement averred that on or about June 25, 1936 he suffered total and permanent disability, due to defective eyesight, "by reason of disease occurring after the issuance of the aforesaid policies," which rendered him practically blind.

The jury returned a verdict in favor of the plaintiff for $1406.48. The defendant filed motions for judgment non obstante veredicto and for a new trial, but withdrew the latter motion. The specially presiding trial judge having died before disposing of the rule for judgment non obstante veredicto, it was agreed that it should be argued before, and be disposed of by, the court in banc.

The court in banc, in an opinion by President Judge SHEELY of the 51st Judicial District, specially presiding, entered judgment in favor of the defendant, non obstante veredicto. See 52 Dauphin County Reporter 318. Plaintiff appealed to this court.

It was not disputed on the trial that the plaintiff is totally and permanently disabled, due to the fact that his eyesight is so defective as to amount to almost total blindness. The question at issue was whether the disability was the result of *disease occurring* '(policies 1 and 2) or *commencing* (policy 3) [they mean the same for the purposes of this case] after the issuance of the policies. There was no averment or

proof that the disability resulted from any *bodily injury,* so that feature of the contracts is not involved. The plaintiff's action rested solely on his averment that his disability was the result of disease occurring (or commencing) after the issuance of the policies.

It was important, therefore, that the jury should be properly instructed as to the meaning of the expression, 'disease occurring (or commencing) after the issuance of the policies'.

The charge of the trial judge in this respect was so inadequate and so unfavorable to the defendant that, if it had not been entitled to judgment non obstante veredicto, we would have been obliged, in any event, to grant it a new trial.

He told the jury that "a disease is a lack of ease, pain, distress, trouble, discomfort, a distressing physical condition." While that definition is etymologically correct—the word being derived from the prefix 'dis', meaning 'want of', 'absence of', etc., and the noun 'ease'—all the dictionaries agree that the definition above given is *obsolete.* The usual, common, and ordinary meaning of 'disease', as used in a life insurance policy is, 'malady, illness, sickness, disorder'.[1]

---

[1] Webster's New International—"Medical. An alteration in the state of the body, or of some of its organs, interrupting or disturbing the performance of its functions, or a particular instance or case of this; any departure from the state of health presenting marked symptoms; malady, affection, illness, sickness, disorder."

Oxford. "A condition of the body, or of some part or organ of the body, in which its functions are disturbed or deranged ...... a. *generally.* The condition of being (more or less seriously) out of health; illness, sickness. b. An individual case or instance of such a condition; an illness, ailment, malady, disorder."

Century. "In *pathology.* (a) In general, a morbid, painful or otherwise disturbing physical condition, acute or chronic, which may result either in death or in a more or less complete return to health; deviation from the healthy or normal condition of any of the functions or tissues of the body. *Specifically.* (b) An individual case of such a morbid condition; ...... an attack of sickness."

The trial judge specifically instructed the jury that it was for them "to determine whether the plaintiff has shown that he has suffered from a lack of ease, pain or distress, or trouble, or discomfort, or has had a distressing physical condition after the dates of these policies;" which, standing by itself, was tantamount to a direction to find a verdict for the plaintiff; whereas, plaintiff was only entitled to a verdict if his admitted disability was the result of a disease—malady, illness, sickness, affection or disorder—which disease occurred or commenced after the dates of the policies in suit.

The defendant did not contend that the policies were void, or that they did not go into effect, or that plaintiff was guilty of any fraud or misrepresentation in securing them. Its contention was that the disability of the plaintiff was not within the coverage of the policies, because it was not the result of disease occurring or commencing after their dates. The case is very similar to *Mayer v. Prudential Ins. Co.*, 121 Pa. Superior Ct. 475, 184 A. 267, except that in that case the issue was whether the *disability occurred* during the period covered by the policy, whereas here it is whether the disability resulted from *a disease occurring (or commencing)* after its date. We said in the *Mayer* case (p. 480): "There is a clear distinction between contesting the validity of the policy and denying liability for the reason that disability had not occurred during the period covered by the policy and [was], therefore, a risk which was never assumed."

This distinction, as pointed out by Judge SHEELY, disposes of the contention of the plaintiff that the defendant was estopped under the Act of July 19, 1935. P. L. 1319 (40 PS 511a), and under the decision in *Prudential Insurance Company v. Kudoba*, 323 Pa. 30, 186 A. 793 (1936), from defending the action because of existence of a disease when the policies were issued. The Act of 1935 estops the insurance company from

setting up in an action on a life insurance policy the defense that the insured was not in the condition of health required by the policy at the time of the medical examination. The *Kudoba* case held that the sound health clause of a life policy does not apply to the health of the insured at or prior to the time of his medical examination and operates to protect the company only against subsequent material changes in his physical condition. Neither the Act of 1935, nor the *Kudoba* case prevents the company from defending an action on the ground that the disability claimed for *was not included in the coverage of the policy.* In *Prudential Insurance Company v. Kudoba,* supra, and all the other Pennsylvania cases relied on by the plaintiff, the company denied the validity of the policy. In the present case the validity of the policy was admitted by the company, but it denied that the plaintiff had made out a case within the coverage of the supplementary contract.

In *Apter v. Home Life Ins. Co.,* 266 N. Y. 333, 194 N. E. 846, 848, an action upon two policies of life insurance which contained a supplemental agreement that disability benefits were payable "if ...... the insured has become, and is, totally and ...... permanently disabled by bodily injury occurring or disease originating after the date on which this agreement becomes effective," the Court of Appeals, speaking through Judge LEHMAN said: "The plaintiff must show that he is entitled to payments according to the stipulations of the policies. The coverage of the policies does not include the disability arising from disease which originated before the policies became effective." See also, *Palumbo v. Metropolitan Life Ins. Co.,* 293 Mass. 35, 199 N. E. 335, 336.

The facts as developed by the evidence—considered in the light most favorable to the plaintiff—may be summarized as follows:

The plaintiff was born on August 24, 1897, and while attending public school, played ball and engaged in other normal activities. He had some difficulty of vision, but did not wear glasses because they did not help him. There were times when sitting in the back of the schoolroom he could not see writing on the blackboard. When he was fourteen or fifteen years old his uncle took him to Baltimore and consulted an oculist who gave him glasses, which he did not use because they did not benefit him any. He tried to join the Navy in 1918 but was rejected because of his eyes. He was rejected by the Army for the same reason, but later was passed in the draft, but the armistice came before he was inducted into active service. During this period he went to the Wills Eye Hospital in Philadelphia to correct his trouble with glasses, but without success. In 1920 he began working as an insurance agent for the defendant company and was required to keep accounts and make detailed reports to the company. He was able to do this work by himself until 1934 or 1935, and continued to work for the company, and operated an automobile until June, 1936, when he became totally and permanently disabled because of defective eyesight. Beginning in July, 1934, the plaintiff had attacks of temporary blindness which continued at intervals throughout 1935 and 1936. During these temporary attacks he felt faint and sick at his stomach. He said he first noticed a difference in his eyesight during a severe head cold in January, 1934. His eyes were examined by other physicians from time to time, including Dr. Coston of Johns Hopkins Hospital in October, 1935. In October, 1931 his eyesight tested 15/200.[2]

2 The visual acuity formulae 15/200, 8/200, 6/200, 4/200, 3/200 are not fractions representing the insured's power of vision. They mean that an object which a normal eye ought to see at 200 feet distance had to be approached up to 15, 8, 6, 4, or 3 feet, respectively, to be seen by the insured (pp. 121a and 260a). Dr. Herman, who made the examination in 1931, said that 15/200

On July 29, 1935, his right eye tested 6/200 and his left eye 8/200. In April 1937 his eyes tested 4/200 and on June 24, 1938, 3/200. His condition was diagnosed in 1935 by Dr. Zimmerman, plaintiff's expert medical witness, as congenital[3] amblyopia, which he described as a defect, with which one is born, in the nerve tract leading from the eye to the posterior portion of the brain which is concerned with seeing. Amblyopia was described by him as being a technical term for defective vision where there is no visible evidence of disease of the eye.[4] It was also described by Dr. Zimmerman as a congenital defect of the papillomacular bundle. He testified that it could be due to either non-development or disease, but, in this case, he could not say which; but he found no visible evidence of disease. Dr. Herman, called by the defendant, had examined the plaintiff in October 1931, for defective vision at the request of Dr. Walton, an optometrist consulted by plaintiff to obtain glasses, and had likewise diagnosed his condition then as congenital amblyopia; and he confirmed this diagnosis in February, 1937, when he examined him again. He said the eye and eyeball showed no appearance of *disease* at either examination; that plaintiff was born lacking certain anatomical structures—a condition of absence of tissue, not a condition where disease was produced or engrafted upon an individual who was born normal.

was so imperfect that the figures lower than that meant little. "From the standpoint of a physician, the individual who has a visual acuity of 15/200 and drives a car is a menace to himself and everybody about him" (p. 201a).

[3] Congenital is defined, "Existing at or dating from birth." Webster's New International Dictionary. "Existing or dating from one's birth, born with one." Oxford Dictionary.

[4] Webster's New International Dictionary. "Amblyopia. Weakness of sight without any apparent change in the ocular structure; the first degree of amaurosis." "Amaurosis. A loss or decay of sight from loss of power in the optic nerve, without any perceptible external change in the eye."

As we have stated before, the word 'disease' as used in such a policy, means 'malady, illness, sickness, disorder'. A congenital defect in the body structure or the failure of some organ to develop normally is not within the term, disease, as used in the policy. The medical experts agreed that plaintiff was suffering from congenital amblyopia; that this term described a condition or defect, not a disease. The plaintiff had the burden of showing that his disability was within the coverage of the policy: *Mayer v. Insurance Co.*, 121 Pa. Superior Ct. 475, 184 A. 267; *Guise v. New York Life Insurance Co.*, 127 Pa. Superior Ct. 127, 191 A. 626. That coverage was disability "as a result of disease" and not disability as the result of non-development of an organ of the body. Where the disability may be the result of two or more causes, for only one of which defendant is liable, the burden is on the plaintiff to establish that one as the cause. The jury cannot be permitted to guess: *Mudano v. P. R. T. Co.*, 289 Pa. 51, 58, 137 A. 104. The plaintiff failed to meet that burden of proof.

But even if it be assumed that the policy was sufficiently broad to include disability as a result of a bodily defect occurring or commencing after the issuance of the policies, we are faced here with the uncontradicted testimony that this condition was congenital. It is not sufficient under these policies to prove that the *disability* occurred or commenced after the issuance of the policies; the *disease* causing the disability must have occurred or commenced after their issuance. To say that a *congenital* condition occurred or commenced more than thirty (30) years after the birth of a party is a contradiction on its face. In this respect the case is entirely different from *McKown v. State Mutual Life Assurance Co.*, 127 Pa. Superior Ct. 117, 191 A. 621, where plaintiff's medical expert testified that a peculiar feature of his disease was that it developed suddenly while the defendant's expert testi-

fied that the disease was slow and insidious, and it was held that the case was for the jury. In the present case both experts testified that the condition was congenital.

For these reasons, we are of opinion that the court in banc was right in entering judgment non obstante veredicto in favor of the defendant.

We find no merit in the assignments filed by appellant alleging error in refusing to admit additional evidence on the trial of the case, which, it was claimed, would have been to his advantage.

The evidence of Dr. Zimmerman, offered in rebuttal of Dr. Herman's testimony, did not tend to rebut the latter's evidence; it tended, rather, to contradict his own prior testimony. His own examination had shown him that plaintiff's defect or condition had grown worse.

The offer to prove that the defendant company issued the plaintiff in 1919 a policy for $1,000 containing a supplemental disability contract, on which the company was paying the plaintiff a disability benefit of $10 a month, was properly excluded. The language of the policy was not identical with those involved in this action. The fact that the company saw fit to pay a disability benefit on a policy issued twelve years before the policies in suit, whether because the language was different, or it was not in full possession of all the facts, or the amount involved was inconsiderable, or out of sympathy for an employee, or otherwise, would not estop it from insisting that in this action the plaintiff must bring himself within the coverage of the policy. As Judge HENDERSON, speaking for this court, said in *Logan's Est.*, 74 Pa. Superior Ct. 82, 86, "The exercise of generosity does not create a binding obligation for its continuance"; nor, we might add, does it estop a party from defending against its expansion to other subjects.

Judgment affirmed.