[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 508 
The plaintiff in the prosecution of this action seeks a rescission and cancellation of a policy of life insurance in the sum of $5,000, issued by the plaintiff to the defendant Seymore Sinett on January 23, 1947, in favor of his wife as beneficiary. Intentional fraud and conscious misrepresentation by the assured in procuring the policy is not alleged. It is asserted that the assured made an untruthful representation of material facts in his application for the policy. Vide, Metropolitan LifeInsurance Co. v. Tarnowski, 130 N.J. Eq. 1, 20 Atl. (2d)
421. I am aware that it is now the well sustained rule that in cases of this nature in equity it is not obligatory upon the plaintiff to prove that the applicant in the preparation of his application for the policy was motivated by a deliberate intent to deceive. Commercial Casualty Insurance Co. v. Southern *Page 509 Surety Co., 100 N.J. Eq. 92, 135 Atl. 511, affirmed101 N.J. Eq. 738, 138 Atl. 919. The degree of materiality of the misstatement of fact in the application has been defined inKerpchak v. John Hancock Mutual Life Insurance Co.,97 N.J. Law 196, 198, 117 Atl. 836.
In the present case the assured is charged with having made an untruthful answer to the following interrogatory embodied in the conventional application form: "Have you ever had any ailment or disease of (c) the Stomach or Intestines, Liver, Kidneys or Genito-Urinary Organs?" The answer was "No." The accusation is that prior to his application he had suffered from gastric and peptic ulcers of the stomach.
My conclusion derived from a consideration of all of the evidence is that the plaintiff has been unable to prove with any persuasive degree of certitude that the answer given by the assured was untrue.
There were occasions distinctly isolated in point of time on which the assured experienced discomfiture from some irritation in his stomach. Not unlike many who suffer an ache and pain, he visited a physician. I infer from the evidence that the physician so interviewed in each instance suspected that the abdominal distress might well be due to a peptic ulcer, but assuredly the diagnosis was provisional and not positive. A diet was prescribed and the disturbance rapidly disappeared.
The recurrence of a like indisposition in October 1944 and again in March 1946 induced the assured to follow the recommendations of the physician and submit to X-rays of his stomach. Such was done on October 24, 1944, and on March 23, 1946, and the roentgenologist on each occasion reported that there was no evidence whatever of an ulcer, no secondary signs of such, and no organic pathology. The negative proof of any pathology of the stomach remains uncontroverted.
Consequently there is more reason to believe that the temporary condition of the assured was attributable to some dietary indiscretion rather than to an ailment or disease within the proper signification of those terms.
The assured was also asked: "(g) Have you consulted a physicianfor any ailment or disease not included in your answers?" *Page 510 
His response was "No." The truthfulness of that reply has not been impugned.
And then, he was requested to divulge: "13. What clinics, hospitals, physicians, healers or other practitioners, if any, not named above, have you consulted or been treated by, within the past five years? If none, so state." Parenthetically, one will note the leading character of the concluding words of that question. The answer was "None."
Should the answer thus given be regarded in the circumstances of the present case as a falsehood of such materiality as to fall within the periphery of the doctrine of equitable fraud, hence justifying a cancellation of the policy?
I think it may be assumed as an element of common knowledge that many persons occasionally suffer uncomfortable sensations from some disordered condition of the bodily digestive processes. Whether from alarm or precaution they interview a physician who, unable to discover any definite pathological ailment, recommends a regulation of diet in accordance with a printed card which the physician extracts from his desk. The nervousness of the person is dispelled by the assurance of the physician, the diet is pursued at least to the extent of a New Year's resolution, and the discomfort disappears. If, then, such a person in his application for a life insurance policy should neglect to state the name of the physician so interviewed and the event, ought the Chancery Division of this court in equity and good conscience nullify the policy on the basis of the commission of equitable fraud? I think not. Cf. Metropolitan Life Insurance Co. v.Urback, 138 N.J. Eq. 108, 46 Atl. (2d) 905. Forfeitures are not favored in the law.
It is my conviction that in the application of the doctrine of equitable fraud this division of the court should not ignore or reject the settled rule at law that such questions are not untruthfully answered if there be no reference to medical consultations respecting indispositions in their nature merely transitory and temporary, and palpably not material to the risk, and such as have in fact no relation to the general health and vital organic bodily functions of the applicant. The terms "ailment" and "disease" are not to be comprehended as embracing *Page 511 
merely transitory and temporary illnesses in the accepted sense.Cf. Urback v. Metropolitan Life Insurance Co.,130 N.J. Law 210, 32 Atl. (2d) 337; Batts v. Eastern Mutual Life Corp.,123 N.J. Law 121, 8 Atl. (2d) 78.
To shave this controversy down to its genuine and substantial core, the plaintiff rests its request for the cancellation of the policy upon its suspicions that the assured has been afflicted with gastric or peptic ulcers of the stomach. There is no preponderant evidence to sustain such suppositions.
Moreover, if this assured had been more discursive and had elaborated his response to embrace the events to which I have alluded, I am not persuaded that the knowledge of them would have influenced the plaintiff to decline to issue the policy or to alter materially its estimation of the degree of the risk.
The assured was physically capable of participating actively and regularly in a branch of athletics and was evidently subjected to the customary physical examination by Doctor McCormick and determined to be a reasonably safe insurance risk.
The shadows of this case arouse the surmise that this litigation would not have been inaugurated had it not been for some mistaken information that the assured had been confined and treated at Johns Hopkins Hospital for ulcers of the stomach, which information was found to be unauthentic and unconfirmed.
 Judgment for the defendants. *Page 512