DeBellis, Appellant, *v.* United Benefit Life
Insurance Company.

Argued November 20, 1952.   Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*H. P. Abramson,* with him *Maurice Abrams,* for appellants.

*John F. Thaete,* with him *Walter B. Gibbons,* for
appellee.

Opinion by Mr. Justice Allen M. Stearne, January 5, 1953:

This is an action in assumpsit based on a policy of insurance on the life of Rinaldo Joseph DeBellis, who met death by violence on October 14, 1947. The insurer defended on the theory that the policy was issued in reliance upon false and fraudulent representations of the deceased and was therefore voidable. The jury returned a verdict for defendant. The learned court below dismissed plaintiffs' motions for new trial and for judgment n.o.v.

The principal amount of the policy sued upon was $5,000.00, with provision for double indemnity in case of accidental death. Plaintiffs originally claimed only $5,000.00 but were permitted at trial to amend their complaint to include a demand for the full $10,000.00 on the theory that the death was accidental. The circumstances surrounding the death clearly eliminate any possibility of accident. Decedent's blood-smeared body was found under a railroad bridge in south Philadelphia, stabbed to death, wrapped in a blanket and securely tied.

Following are the portions of the application for insurance alleged to be fraudulent and an analysis of the testimony relevant to each:

"1. (a) What is your full name? Mr. Rinaldo Joseph DeBellis"

A birth certificate introduced into evidence shows that this undoubtedly was the insured's correct name in his infancy, but he was known to the police and was serving parole under the name "Joseph DiLucas" at the time he executed the insurance application. Defendant complains that the insured fraudulently concealed this and other names by which he was known in connection with criminal activities extending over a period of many years.

*"6. (a)* What is your present occupation? Salesman. (Describe duties) : Selling Medicine."

Plaintiffs attempted to justify this statement by showing that the insured had been interested in a foot salve developed by his father and contemplated formation of a company to manufacture and market the remedy. The testimony of the parole agent called by plaintiffs makes it clear that this idea of the insured's never advanced beyond the planning stage. He spoke to the agent about it several times, and the agent "told him to forget the whole idea of going into the salve business" and "to try to get a job instead". The witness indicated that insured finally did get a job as a truck helper which he held at the time he applied for insurance. Defendant called a detective from the homicide squad who investigated the death. This witness testified that Ernest DeBellis, brother of the insured and one of the plaintiffs in this action, told him that the insured "was a baseball pool and a football pool salesman or seller and that he was engaged in gambling, . . . he, Ernest DeBellis, said he tried to persuade his brother, Joseph DeLuca or DeBellis to try to make an honest living, and at that time it seems that the decedent had told his brother Ernest to mind his own business, that he was going to do as he pleased, that he was doing all right." This indication that insured had no legitimate occupation is supported by the statement of another police officer who testified that he questioned the insured early in 1947 and "He told me at that time that he was still unemployed and he wasn't doing anything at the present time."

*"10. (b)* Are your habits correct and temperate? Yes."

Defendant argues that the insured's criminal record demonstrated that his habits were not correct and

temperate and should have been disclosed by him in answer to this question.

"*12.* Name all causes for which you have consulted a physician in the last ten years: None."

This item was not included by defendant in its original answer, but was pleaded as an amendment at the trial when testimony disclosed that the insured had been treated for gunshot wounds approximately nine years before the date of the insurance application.

The principles which govern the right of an insurance company to avoid a policy because of misrepresentation were exhaustively reviewed by Mr. Justice (later Chief Justice) DREW in *Evans v. Penn Mutual Life Insurance Company of Philadelphia,* 322 Pa. 547, 186 A. 133. It was decided in that case that in order to avoid a policy the insurance company must establish not only that the representations in the application were false but also that they were fraudulently made. See also: *Haag v. Prudential Insurance Company of America,* 348 Pa. 614, 36 A. 2d 470; *Travellers Insurance Company v. Heppenstall Company,* 360 Pa. 433, 61 A. 2d 809. To establish fraud, however, "It is sufficient to show that they [the representations] were false in fact and that insured knew they were false when he made them . . ., since an answer known by insured to be false when made is presumptively fraudulent." (*Evans v. Penn Mutual,* supra, p. 553). In discussing the *quantum* of evidence necessary to establish fraud, the Chief Justice further said (p. 555, 557): "Ordinarily the question of the truth or falsity of the answers and whether or not they were given by insured in good faith is for the jury. Where it affirmatively appears, from sufficient documentary evidence, that the policy was issued in reliance on false and fraudulent statements, made by or on behalf of

the insured, as where false answers are shown to have been given by insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer.

". . . the questions whether or not the answers were false and whether or not they were given by insured in good faith are questions of fact, and their determination must be left in the jury's hands whenever the evidence concerning them is conflicting, or whenever the burden of proving them is carried by oral testimony, even though such testimony is uncontradicted. A recognized exception to the latter rule is of course to be found in the situation where the uncontradicted testimony of a party's own witness establishes facts essential to his opponent's case." See also: *Prevete v. Metropolitan Life Insurance Company*, 343 Pa. 365, 22 A. 2d 691.

Applying the rule last stated to the instant case, it is clear that defendant was entitled to judgment as matter of law. Insured represented himself to be a medicine salesman at the time of the application. The most favorable view of the uncontradicted testimony of *plaintiffs'* witnesses indicates that the insured's occupation at that time was truck helper. (There was uncontradicted testimony of admissions by a brother of the insured, a plaintiff herein, that the insured was a professional gambler). His vague notion about engaging in the manufacture and sale of a foot salve cannot justify a statement that he was a medicine salesman. Thus, the falsity of his representation is beyond reasonable dispute. It would be a futile thing to submit to a jury the question whether or not he knew his own occupation and therefore was deliberately falsifying when he misstated it. There being no issue of fact as to either falsity or bad faith of this statement, *which was a material misrepresentation affecting the risk,*

there was nothing for a jury to pass upon, and defendant was entitled to binding instructions. A statement concerning occupation of the insured is material to the risk if the real occupation of the applicant would expose his life to greater danger than the occupation he stated: *Hartman v. Keystone Insurance Company,* 21 Pa. 466, 476.

Since this issue alone controls the case, it becomes unnecessary to consider whether it was proper to submit to the jury the fraudulent character of the remaining answers of which defendant complained, viz.: concealment of criminal aliases, statement that insured's "habits" were "correct and temperate", and failure to reveal treatment for gunshot wounds.

It is likewise unnecessary to consider alleged trial errors when none of them have any bearing on the admission of the undisputed testimony which is the basis of this decision. Whatever errors may be found in the charge to the jury are obviously harmless since the judge should have instructed the jury to return a verdict for defendant.

Judgment affirmed.