## Dunsmore v. Criville (No. 2)

*Fox, Differ, DiGiacomo & Lowe,* for plaintiffs.
*H. Kenneth Butera,* for defendants.

FORREST, P. J., November 18, 1964.—Plaintiffs have filed their complaint seeking (1) rescission of their

agreement to purchase certain real estate from defendant, Criville; and (2) recovery of the down money and incidental expenses. Defendants filed their answer, new matter and counterclaim, seeking specific performance of the agreement, to which plaintiffs made a reply.

The issues raised by the pleadings are:

1. Whether defendant, Criville, for purpose of inducing plaintiffs to enter into the agreement (a) fraudulently misrepresented that the location of the westerly boundary of the property was 20 feet farther west than the actual boundary; (b) fraudulently misrepresented that along the westerly boundary there was a french drain for disposal of waste water from sources other than toilets; and (c) fraudulently misrepresented that there were septic tank and two cesspools on the premises serving as a sewage disposal system. (The answer, as amended at the trial, alleges that there were a septic tank and two cesspools and hence denies that this representation was false).

2. Whether plaintiffs relied upon the allegedly fraudulent misrepresentations.

3. Whether defendant was able and willing to extinguish an easement across the premises.

4. Whether, by executing a supplemental agreement, plaintiffs ratified the agreement and are barred from alleging fraud.

### Findings of Fact

1. In July, 1962, and thereafter to the present time, Raymond J. Criville, hereinafter called defendant, owned premises 2761 Belmont Avenue, Lower Providence Township, this County.

2. On July 26, 1962, defendant desired to sell his said property.

3. On July 26, 1962, plaintiffs, Anne D. Dunsmore and Greta J. Dunsmore, accompanied by Frank De-Benny, a real estate salesman in the office of Russell

Santangelo, visited the premises, met defendant and told defendant that plaintiffs were prospective buyers.

4. Plaintiffs told defendant that they were concerned about the drainage facilities, because of the area in which the property was located.

5. Defendant then and there stated to plaintiffs that the waste substances from the toilets flowed by pipe into a system which was composed of a septic tank, two cesspools, and finally a drain.

6. Defendant then and there stated to plaintiffs that the waste water from the sinks, wash tub, bath tub and washing machine ran from the house into a french drain, trench filled with shale and gravel, on his property; that the drain was 50 feet long, 6 feet wide and 6 feet deep, running parallel with the western boundary of the property.

7. The drain, mentioned in finding of fact no. 5, which takes the overflow from the second cesspool, continues across the westerly boundary of the premises and continues ten feet upon the land of the adjoining owner.

8. There was no such french drain as represented by defendant (set forth in finding of fact no. 6).

9. Defendant testified that there was a french drain, but admitted that 10 feet of such drain is upon the land of the adjoining owner.

10. The representations made by defendant as aforesaid were reaffirmed by defendant on August 1, 1962, prior to the signing of the agreement of sale.

11. In reliance upon the representations, plaintiffs, as buyers, signed an agreement of sale with defendant as seller, on August 1, 1962, and delivered the down money of $1,000 to Harry Butera, Inc., agent for defendant, who presently holds the same.

12. The agreement of sale provides, inter alia, "Premises are subject to existing restrictions and easements, if any . . ."

13. There is a temporary 15 feet wide easement running across the front of the property in favor of a third party and there is a 10 or 12 feet wide easement across the front of the property in favor of the Pennsylvania Department of Highways.

14. Thereafter, plaintiffs became in doubt as to the correctness of the representations made by defendant. Plaintiffs ordered a survey made at a cost of $35, in order to set the doubt to rest.

15. On August 30, 1962, the parties signed an extension agreement, extending time for performance to September 7, 1962, "with the express understanding and agreement that this extension of time is made without prejudice to any of the other terms and conditions of the said agreement."

16. Thereafter, before September 7, 1962, defendant cut the pipe, which left the house through the western wall, taking drain waters other than toilet water. He made the cut within his western boundary. Then he connected this pipe with a two-inch pipe which ran parallel with the western boundary line toward the front of the property where it ended before it reached the street, the end of the pipe being exposed to the surface.

17. Harry Butera, Inc., was not a party to these misrepresentations and was merely the stakeholder.

### Discussion

It was decided over 100 years ago that even if a party innocently misrepresents a material fact, it is conclusive against him, "for it operates as a surprise and imposition on the other party. These are elementary principles, settled by numerous authorities, Story, Eq. 201": Hunt v. Moore, 2 Pa. 105, 108 (1845). Later cases restate this principle. Thus, in Merritz v. Circelli, 361 Pa. 239, 242 (1949) the Supreme Court in its opinion stated: "The fact . . . that the representation was not made with fraudulent intent does

not absolve defendants from liability." That misrepresentation, whether fraudulent or not, of a material fact, is sufficient for a purchaser to rescind is suggested in more recent cases: Nissenbaum v. Farley, 380 Pa. 257, 264 (1955) ; Laughlin v. McConnel, 201 Pa. Superior Ct. 180, 184 (1963). Likewise, the Restatement Contracts §476, comment b, states: "Innocent material misrepresentation though not accompanied by negligence has the same effect as fraud in rendering a contract . . . voidable." The Restatement view was cited and followed in LaCourse v. Kiesel, 366 Pa. 385 (1951).

In this case there is clear and convincing evidence that the geographical area where this property is situate poses drainage and disposal problems and that plaintiffs were aware of same. Therefore, it is understandable that plaintiffs made specific inquiry about the nature, extent, location and adequacy of the sewage and waste water drainage systems.

Defendant made representations regarding the sewage disposal system, failing to mention that part of the system extended beyond the boundary of the property. He also made representations regarding the waste water disposal system which were not entirely accurate. These representations were not fraudulently made, but they were not in accordance with fact. Defendant himself admitted when testifying that "I was ten feet over on somebody else's ground for years, and didn't know it." He likewise admitted that there is no french drain running parallel with the western boundary line.

Taking defendant's admissions as facts, we conclude that this is a proper case for the granting of relief to plaintiffs. Defendant contends that plaintiffs had full knowledge of the misrepresentations when they signed the extension agreement, and hence, that plaintiffs waived the right to rescind the contract. However, the

evidence shows that plaintiffs had *doubts* whether defendant had misrepresented, not *knowledge* of the misrepresentations, on the date of the extension agreement. One of the objects of the extension agreement may have been to afford plaintiffs additional time within which to determine whether defendant's representations were correct. Under these circumstances, it would be unjust to plaintiffs to hold that the extension agreement bars them from showing the misrepresentations as grounds for rescission.

### Conclusions of Law

1. Equity has jurisdiction.

2. Plaintiffs should be allowed to rescind the contract of sale with defendant, because of the misrepresentations mentioned in the findings of fact.

3. The execution and delivery of the extension agreement did not constitute a waiver of plaintiff's right to assert misrepresentations as a ground of rescission of the contract of sale.

4. Plaintiffs are entitled to a return of the down money in the sum of $1,000 presently held by defendant, Harry Butera, Inc., in escrow.

5. Plaintiffs are entitled to recover $35 from defendant, Raymond J. Criville, to reimburse plaintiffs for the expense of the survey.

6. Defendant, Raymond J. Criville, should pay the costs.

### Decree Nisi

And now, November 18, 1963, it is ordered, adjudged and decreed that:

1. The agreement of sale between plaintiffs and defendant, dated August 1, 1962, shall be and is rescinded, and copies thereof in the possession of defendant shall be delivered to plaintiffs for cancellation.

2. Defendant, Harry Butera, Inc., promptly upon this decree nisi becoming final, shall return the down

money in the sum of $1,000 to plaintiffs, Anne D. Dunsmore and Greta J. Dunsmore.

3. Defendant, Raymond J. Criville, shall promptly upon this decree nisi becoming final, pay the sum of $35 to said plaintiffs.

4. The counterclaim is dismissed.

5. Costs to be paid by Raymond J. Criville.

The prothonotary shall give prompt notice hereof to the parties. Within 20 days after such notice, exceptions may be filed. If no exceptions are filed, the decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree.