471 A.2d 1257

Dennis C. KNEPP and Karen L. Knepp, Parents and Natural Guardians of Dennis C. Knepp, Jr., a minor, and Dennis C. Knepp, Jr., as an individual, Appellants,

v.

NATIONWIDE INSURANCE COMPANY.

Dennis C. KNEPP and Karen L. Knepp, Parents and Natural Guardians of Dennis C. Knepp, Jr., a minor, and Dennis C. Knepp, Jr., as an individual, Appellants,

v.

NATIONWIDE INSURANCE COMPANY.

Superior Court of Pennsylvania.

Submitted May 31, 1983.

Filed Feb. 3, 1984.

480

John R. Carfley, Philipsburg, for appellants.

Grant H. Fleming, State College, for appellee.

Before ROWLEY, WIEAND and CIRILLO, JJ.

ROWLEY, Judge:

These are consolidated appeals from an order of the trial court *en banc* sustaining exceptions filed by Nationwide Insurance Company, and dismissing exceptions filed by the Knepps to the decision of the trial judge sitting without a jury and from the entry of judgment in favor of Nationwide.

Dennis C. Knepp, Jr., was born on December 9, 1973. At that time it was discovered that he suffered from a congenital condition known as coronal hypospadias or hypospadias of the first degree, a disorder of the urethra. The condition was diagnosed almost immediately after birth and it was noted on the hospital's "Newborn Examination Record." Dennis' physician informed the Knepps of the nature of Dennis' condition at or near the time of his birth and, over the next four years, Dennis' parents twice inquired as to whether it was not yet necessary for corrective surgery to be performed. They were informed that surgery would not be necessary until after Dennis had begun to attend school.

On June 8, 1977, the Knepps applied to Nationwide for two policies of insurance, one denominated a "Hospital and Surgical Expense Policy" and the other a "Major Medical Expense Policy." Nationwide approved the applications and, on September 1, 1977, issued the two policies.

On June 9, 1978, surgery was performed on Dennis in an unsuccessful attempt to correct the disorder. The Knepps submitted a claim to Nationwide for the cost of the operation and related expenses claiming that the costs were covered by the policies issued some nine months prior to the operation. By letter dated November 2, 1978, Nationwide denied the claim stating that "the policies are designed to cover only those illnesses, injuries or disorders which have their origin after the effective date of the policy [sic]." The letter also informed the Knepps that the company believed that the Knepps had wrongfully failed to disclose Dennis' condition and labelled the failure as a "material misrepresentation." Nationwide gave the Knepps the option of signing waivers as to Dennis with regard to "any disorder of the urethra," or having the policies terminated and all premiums returned. The Knepps failed to respond. By letter dated February 9, 1979, Nationwide informed the Knepps that it presumed they would not execute the waivers and that the company was giving them formal notice of cancellation. A check was enclosed with this letter "in full refund of the premiums paid."

The Knepps commenced this action on March 3, 1979, by filing a complaint containing two counts. Count I stated a claim in assumpsit for $1,393.70 representing the costs attendant to the surgery. In Count II, the Knepps sought a declaratory judgment in their favor "reinstating" the insurance policies without any restriction as to Dennis in order to have insurance coverage for future surgery necessary to correct the hypospadias.

The case was tried on November 6, 1979, before the Honorable Richard M. Sharp, President Judge, sitting without a jury. By an opinion and order dated January 17, 1980, Judge Sharp found in favor of the Knepps on Count I and in favor of Nationwide on Count II. Both parties filed exceptions to the decision and argument was heard by a court *en banc*. The court *en banc* sustained Nationwide's exceptions to the decision on Count I and dismissed the Knepps' exceptions to the decision on Count II. Judgment

was subsequently entered in favor of Nationwide on both counts of the complaint and the Knepps appealed.[1]

Appellants present two issues for our consideration. First, whether the trial court *en banc* erred in concluding that appellee insurer was not required to reimburse the Knepps for the cost of the unsuccessful surgery of March, 1979. Second, whether the trial court erred in holding that Nationwide could rightfully rescind the insurance policies and return the premiums to the Knepps.

■ We agree with the trial court's determination that Dennis' disorder is not covered by the policies issued by Nationwide. Nationwide agreed, in each of the two policies, to pay benefits "in the event of injury or sickness" as those terms were defined in the policies. Sickness is defined in the policies as:[2]

"Sickness" means sickness or disease *contracted by an Insured Family Member more than 15 days after such Insured Family Member becomes covered* under this policy and while such coverage is in force ...." (Emphasis added.)

Thus, coverage is not provided for sicknesses contracted prior to the effective date of the policy.

1. The Knepps originally filed a notice of appeal on March 16, 1981, docketed at Superior Court No. 642 Philadelphia 1981. However, judgment was not entered on the trial court docket until January 18, 1982. This appeal is therefore untimely and will be quashed. On February 10, 1982, the Knepps filed a second notice of appeal which was docketed at Superior Court No. 760 Philadelphia 1982. The Knepps then filed with this court a motion for consolidation of the two appeals which was granted on March 18, 1982. While this procedure is unorthodox and not recommended, it is closely analogous to what we have ourselves directed to be done in other cases. *See, e.g., Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.,* 317 Pa.Super. 497, 501–502, 464 A.2d 431, 433–434 (1983). Furthermore, Nationwide has not raised any objection to the propriety of our entertaining these appeals. We therefore conclude that this case is properly before us.

2. The Knepps do not claim coverage under the other category of insured loss, namely, "injury." Nationwide, on the other hand, does not contend that hypospadias is not within the definition of "sickness" but only that it is not a "covered" sickness.

■ It is a rule of long standing that insurance policies may permissibly be drafted to limit coverage to illnesses arising after the commencement of insurance coverage. *Myers v. Metropolitan Life Insurance Company*, 152 Pa. Super. 507, 33 A.2d 253 (1943). *See also:* IB Appleman, *Insurance Law and Practice* (rev. ed., 1981), § 396. In *Myers*, this Court sanctioned the use of the terms "commencing" and "occurring" in drafting such valid limitations within the definitions of coverage. We perceive no difference between the two terms construed in *Myers, supra*, and the term "contracted" as used in the policies currently before us. The limitation to illnesses or disorders subsequent to the effective date of coverage contained in these policies is therefore valid.

■ It is clear, of course, that the condition for which coverage is claimed in the present case was contracted prior to the issuance of the policies. We follow *Myers* in holding that a *congenital* condition cannot qualify as an event covered by a policy with coverage drawn in the manner set forth above. "To say that a *congenital* condition occurred or commenced [or was contracted] more than [three] years after the birth of [an insured] is a contradiction on its face." *Id.*, 152 Pa.Superior Ct. at 515, 33 A.2d at 257. A congenital condition, by definition has its inception at or before the birth of the individual afflicted.[3] It is undisputed that Dennis' condition is congenital.

■ Appellants argue that they were not aware of the extent of Dennis' condition when they purchased the policies. Whether the Knepps were aware of Dennis' condition, or its extent, is of no moment, however, in determining whether the policy provides coverage for a pre-existing condition. Where, as here, a policy of insurance is drawn to

---

**3.** Webster's New Twentieth Century Dictionary, Unabridged Second Edition (1979), defines "congenital" as "belonging or pertaining to an individual from birth; resulting from one's heredity or prenatal development; as, a *congenital* disease, a *congenital* deformity."
Dorland's Medical Dictionary (25th ed., 1974), defines "congenital" as "existing at, and usually before, birth; referring to conditions that are present at birth, regardless of causation."

cover only *prospective* illnesses the insured's knowledge or lack of knowledge of the pre-existing illness is immaterial in a suit to recover claimed benefits. *Guise v. New York Life Insurance Co.*, 127 Pa.Super. 127, 191 A. 626 (1937); *McKown v. State Mutual Life Assurance Co.*, 127 Pa.Super. 117, 191 A. 621 (1937). It is therefore clear to us, and the court *en banc* so held, that the policies involved in this case do not provide coverage for Dennis' condition.[4]

■ We also conclude that the court *en banc* correctly held that the Knepps were not entitled to reinstatement of the insurance policies. There can be no real dispute that Mr. and Mrs. Knepp incorrectly answered questions on the application for insurance. They informed Nationwide that Dennis did not have, and that they had not been informed that Dennis suffered from, a "disease or disorder of the genito-urinary tract." Moreover, when asked about whether they "or anyone proposed for coverage ever had been advised or have or contemplated having a surgical operation," they revealed only circumstances relating to one of Mrs. Knepp's pregnancies. By the Knepps' own testimony, these answers were false. It is also beyond cavil that the Knepps' misstatements and omissions were material to the insurer's consideration of the Knepps' application for insurance coverage.

Under such circumstances, an insurer may rightfully rescind the policies of insurance. Section 622 of the Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, Art. VI, § 622, 40 P.S. § 757, states:

4. We note that regulations recently promulgated by the Insurance Commissioner now require insurance policies to provide for coverage of pre-existing conditions if, *inter alia,* the condition was undiagnosed prior to the effective date of insurance coverage. *See* 31 Pa.Code §§ 88.51–88.53. We express no opinion upon the effect these regulations might have upon the law as set forth in the text. Those regulations are not applicable, however, to the policies issued in this case. *See also:* The Individual Accident and Sickness Insurance Minimum Standards Act, Act of May 18, 1976, P.L. 123, No. 54, 40 P.S. §§ 776.1 et seq. and the regulations issued pursuant thereto, 31 Pa. Code §§ 88.1 et seq.

The falsity of any statement in the application for any policy [of health or accident insurance] shall not bar the right to recovery thereunder, unless the false statement was made with actual intent to deceive, or *unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.* (Emphasis added.)

As recently stated by the United States Court of Appeals for the Third Circuit in interpreting this section:

When the policy is sought to be avoided on the ground of fraud, the statute requires intent to deceive. However, recovery [on the policy] may be denied on alternate and separate grounds if false statements materially affected the risk accepted or the hazard assumed by the insurer. In these latter two instances, if the statements are false to the knowledge of the applicant but are not made with intent to deceive, they nevertheless void the policy. *Connecticut Mutual Life Insurance Co. v. Wyman,* 718 F.2d 63, 67 (3rd Cir.1983).

Because the statements were in fact false, because the Knepps were informed of the nature of Dennis' condition, and because the misstatements were material to the acceptance of the risk and the hazard assumed by the insurance carrier, the trial court *en banc* properly refused to reinstate these policies.

The appeal at No. 642 Philadelphia 1981 is quashed. In the appeal at No. 760 Philadelphia 1982, judgment is affirmed.

WIEAND, J., filed a concurring opinion.

WIEAND, Judge, concurring:

I agree fully with the majority's excellent analysis of the coverage issue and join its decision holding that the cost of performing surgery upon Dennis C. Knepp, Jr., to correct a congenital abnormality was not covered by a policy of insurance purchased after his birth and indemnifying his parents for hospital and surgical expenses incurred in order to treat sickness or disease contracted by him more than

fifteen days after the effective date of the policy. I also agree with the majority that the insurer may rescind the policy because the applicants, in this case the parents, failed to disclose their son's congenital abnormality despite their knowledge of it and despite the fact that the insurer specifically requested such information. I reach that conclusion by a process of reasoning which differs only slightly from that of the majority.

With respect to this latter phase of the case, it is significant that the insurer is seeking to rescind the policy of insurance and not to avoid liability for hospital expenses already incurred by the insured. The contract of insurance which the insurer seeks to rescind is executory. Rescission of the policy will not necessarily prevent the insured from purchasing future medical coverage. In that event, however, the amount of the premiums to be paid for hospital and surgical coverage will be determined according to a correct assessment of the risk based upon an accurate statement of the physical condition of the person to be insured.

Because the contract of insurance sought to be rescinded is executory, "[f]alse representations operating to induce [the] contract are grounds for its rescission even though the person making them [was] unaware that they [were] false." 8 P.L.E. Contracts § 314. See also: *Adelman v. CGS Scientific Corp.*, 332 F.Supp. 137, 146 (E.D.Pa.1971), quoting *General Finance Corp. v. Keystone Credit Corp.*, 50 F.2d 872, 878 (4th Cir.1931); *Hunt v. Moore*, 2 Pa. 105 (1845); *Metropolitan Life Insurance Co. v. Sinett*, 2 N.J. Super. 506, 64 A.2d 639 (1949); *Metropolitan Life Insurance Co. v. Lodzinski*, 124 N.J.Eq. 328, 1 A.2d 856, *reversed on other grounds*, 124 N.J.Eq. 357, 1 A.2d 859 (1938); 12 Williston on Contracts, § 1500 (3d ed.).

Even if we require a knowing misrepresentation, however, the facts of the instant case are such that rescission was properly granted. At the time the written application for insurance was made, the questions contained thereon were read to Mr. and Mrs. Knepp, the boy's parents, and

their answers were recorded before they signed the application. They do not question the accuracy of their answers as they appear on the application. The following questions were asked and answers given:

"9. Have you or any person now proposed for coverage:

. . . .

c. Ever had, been advised or have, or *contemplated having, a surgical operation?*

| Yes | No |

10. To the best of your knowledge and belief, have you or any person now proposed for coverage ever had, or ever been medically treated for or advised by a doctor or other practitioner that you or they had (circle applicable impairment):

. . . .

b. Paralysis, dizziness, fainting spells, high or low blood pressure, *disease or disorder of genito-urinary tract* or gall bladder?

Yes | No |

11. Within the last five years, have you or any person now proposed for coverage:

. . . .

b. Any disease, disorder, injury or operation which has not been previously mentioned?

Yes | No |

(Emphasis supplied)

Paragraph 12 called for full details to each and every part of Questions 9, 10 and 11 to which the answer was Yes. The answer appearing to paragraph 12 listed only maternity on Mrs. Knepp's part.

These answers were incorrect. Dennis C. Knepp, Jr. had been born three and a half years earlier with a congenital condition known as coronal hypospadias, a result of adros-

terone deficiency during gestation. This condition arrested the development of the urethra in the boy's penis. At birth it was observed that the opening or meatus in the penis was not at the end of the penis but on the ventral surface or lower side of the penis at the small valley around the head of the penis. The condition had been observed at delivery by Mrs. Knepp's physician and had been discussed with her. She was told that there was no cause for alarm but that future surgery would be necessary. Because a portion of the skin flap was to be used in the operating procedure it was recommended that the boy not be circumcised. The parents agreed, and circumcision was not performed. The parents also accepted the medical recommendation that surgery be delayed and not be performed while the child was an infant. On two separate occasions prior to making the application for insurance, the parents had inquired whether it was time for their son's surgery to be performed. The correctness of these facts is supported by medical records and by the testimony of the parents themselves.

The trial court concluded, nevertheless, that the parents' failure to disclose their son's condition in the insurance application was not committed in bad faith or with a conscious intent to deceive and defraud the insurance company. Therefore, rescission was denied. The court en banc held otherwise. All the evidence, the court en banc observed, was clearly to the effect that the parents had known of their son's disorder and had failed to disclose it to the insurer. Under such circumstances, concluded the court en banc, the parents' misrepresentations entitled the insurer to rescind the policy after the true facts had become known.

A court en banc may reverse the hearing judge in a proper case, but if this occurs the court en banc must state its reasons for so doing; and it is the duty of an appellate court to examine carefully the court's reasons, together with the entire record, and determine if the action of the court en banc was justified. See: *Vajentic Estate,* 453 Pa. 1, 6, 306 A.2d 300, 303 (1973); *Billinger Estate,* 451 Pa. 77,

80, 301 A.2d 795, 796 (1973). See also: *Bortz v. Troth,* 359 Pa. 326, 332, 59 A.2d 93, 96 (1948); *Lacey v. Rutter,* 358 Pa. 502, 506, 57 A.2d 679, 680–681 (1948); 16 Standard Penna. Practice 2d § 91:124. Where the trial court's findings depend upon the credibility of witnesses whom the court heard and saw, those findings are to be accorded great weight by the court en banc. See: *Lacey v. Rutter, supra,* 358 Pa. at 505, 57 A.2d at 680, quoting *Thorndell, Administratrix v. Munn,* 298 Pa. 1, 3, 147 A. 848, 849 (1929); *Jones v. Motor Sales Co. of Johnstown,* 322 Pa. 492, 495–496, 185 A. 809, 811 (1936); *Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542, 547, 151 A. 15, 16 (1930); *Luria v. Robbins,* 223 Pa.Super. 456, 460, 302 A.2d 361, 363 (1973). Where, however, the en banc court has stated its reasons for rejecting the trial judge's findings, those findings cannot have the same weight as would ordinarily attach; this is particularly the case "where the issue must be determined from reasoning or inferences drawn from undisputed facts." *YMCA of Germantown v. Philadelphia,* 323 Pa. 401, 408–409, 187 A. 204, 208 (1936), citing *Kirmse, et al. v. Adler, et al.,* 311 Pa. 78, 166 A. 566 (1933), and *Hamilton, et al. v. Fay,* 283 Pa. 175, 128 A. 837 (1925).

In *Shafer v. John Hancock Mutual Life Insurance Co.,* 410 Pa. 394, 189 A.2d 234 (1963), an applicant for life insurance had made statements which were false in fact and which were known to be false when made. His beneficiary argued, however, that the insurer had failed to prove an intent to deceive or defraud the insurer. The Supreme Court rejected this argument and held that where material misstatements are knowingly false, an insurer can avoid the policy. The Court said:

"In order to avoid the policy sued upon, the burden was upon the defendant to establish that the statements made by the insured in the application were material to the risk and were falsely and fraudently made by the insured: *Evans v. Penn Mutual Life Insurance Co.,* 322 Pa. 547, 186 A. 133 (1936). If the statements in fact were false and the insured knew that they were false when he made them, this constituted fraud, since a statement known to

be false when it is made is presumptively fraudulent: *Kizirian v. United States Life Ins. Co.*, 383 Pa. 515, 119 A.2d 47 (1956). If such falsity and the requisite bad faith affirmatively appear from (a) competent and uncontradicted documentary evidence, such as hospital records, admissions in the pleadings or proofs of death or (b) the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer, *Kizirian v. United States Life Ins. Co., supra.* Inquiries in applications for life insurance as to prior medical attendance and hospitalization are material to the risk and fraudulent answers thereto must permit the insurer to avoid the policy, not only because of a failure to report the exact nature of the previous illness, but also because of a failure to furnish information from which the insurer could protect itself through further investigations. *Reeder v. Metropolitan Life Ins. Co.*, 340 Pa. 503, 17 A.2d 879 (1941); *Prevete v. Metropolitan Life Ins. Co.*, 343 Pa. 365, 22 A.2d 691 (1941).

In the instant case, the falsity of the answers given by the insured was established beyond question by unimpeached documentary evidence and in part by plaintiffs' own witnesses. But argue the appellants, this does not conclusively establish that the insured knew they were false or intended thereby to deceive and defraud the company. It is speculated that the false statements were made inadvertently and unintentionally. As stated in *Derr et al. v. Mutual Life Ins. Co.*, 351 Pa. 554, 559, 41 A.2d 542, [544] (1945) ' " ' ... Where it affirmatively appears from sufficient documentary evidence, that the policy was issued in reliance on false and fraudulent statements, made by or on behalf of the insured, as where false answers are shown to have been given by the insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer.' " ' Accord, *Freedman v. Mutual Life Ins. Co.*, 342 Pa. 404, 21 A.2d 81 (1941)." *Id.*, 410 Pa. at 398–400, 189 A.2d at 236–237. See also: *Connecticut Mutual Life Ins. Co. v. Wyman*, 718 F.2d 63,

67 (3rd Cir.1983); *Wolfson v. Mutual Life Insurance Co. of America*, 455 F.Supp. 82, 85 n. 3 (M.D.Pa.1978), *aff'd mem.*, 588 F.2d 825 (3rd Cir.1978); *DeBellis v. United Benefit Life Insurance Co.*, 372 Pa. 207, 210–211, 93 A.2d 429, 430–431 (1953); *Indovina v. Metropolitan Life Insurance Co.*, 334 Pa. 167, 171–172, 5 A.2d 556, 558 (1939); *McCloskey v. New York Life Insurance Co.*, 292 Pa.Super. 1, 6–7, 436 A.2d 690, 692–693 (1981); *Underwood v. Prudential Insurance Co.*, 241 Pa.Super. 27, 32–33, 359 A.2d 422, 424–425 (1976); *Glaser v. Prudential Insurance Co. of America*, 157 Pa. Super. 471, 474–475, 43 A.2d 534, 535 (1945); *Glaser v. Metropolitan Life Insurance Co.*, 139 Pa.Super. 261, 266, 11 A.2d 558, 559–560 (1940); *Loder v. Metropolitan Life Insurance Co.*, 128 Pa.Super. 155, 160, 193 A. 403, 405–406 (1937). Cf. *Ciesielski v. Prudential Insurance Co. of America*, 416 Pa. 146, 205 A.2d 42 (1964); *Travellers Insurance Co. v. Heppenstall Co.*, 360 Pa. 433, 61 A.2d 809 (1948). If an insurer can avoid liability under such circumstances, it can most certainly obtain rescission of an executory contract of insurance under similar circumstances.

For these reasons I concur with the majority in holding that the court en banc properly overruled the trial court and permitted the insurer to rescind or cancel the policy providing coverage for hospital and medical expenses.